Judge David G. Estudillo

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GUSTAVO CASTELLANOS-TAPIA,<br><br>Defendant. | NO. CR23-5085-DGE-5<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Defendant GUSTAVO CASTELLANOS-TAPIA appears before this court for sentencing in the above-captioned case pursuant to his guilty plea on February 26, 2024, to Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Presentence Report (PSR) at ¶ 2; Plea Agreement at ¶ 1.) The United States respectfully recommends the Court impose a sentence of 108 months' imprisonment to be followed by a four-year term of supervised release, and a $100 special assessment. The government believes this sentence, at the low-end of the applicable sentencing guidelines range,[1] represents the appropriate sentence, and submits

---

[1] The government makes this recommendation consistent with its obligation to recommend a sentence at or below the low end of the sentencing guidelines range as calculated by the Court. Should the Court calculate a lower guidelines range than that calculated by the Probation Office and the government and set forth herein, the government will amend its recommendation at the time of the sentencing hearing.

United States' Sentencing Memorandum - 1
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  the arguments set forth in this memorandum in response to the defendant's and the

2  Probation Office's recommendations of a significantly below-guidelines sentence.[2]

3  <center>**I.      BACKGROUND**</center>

4  **A.      Offense Conduct**

5        **1.      Summary of Investigation**

6        In March 2023, the Federal Bureau of Investigation, the Drug Enforcement

7  Administration, and other federal and local law enforcement agencies concluded a two-

8  year investigation into drug trafficking focusing on two prison gangs, the Aryan Family

9  and Omerta, which are predominately while prison gangs that have a presence both inside

10  and out of prison facilities. (PSR ¶ 35.) These gangs engage in drug trafficking as one of

11  their primary purposes, and the investigation identified numerous individuals affiliated

12  with the gangs who were determined to have been involved in drug trafficking and

13  money laundering, including the distribution of multi-pound quantities of

14  methamphetamine, fentanyl, heroin, and cocaine throughout western Washington and

15  other states. *Id.* The investigative team devoted substantial resources to identifying the

16  organizational structure of the drug trafficking organization (DTO), including multiple

17  rounds of court-authorized interceptions of wire and electronic communications,

18  surveillance, the use of confidential informants, search warrants, and other investigative

19  techniques. (PSR ¶¶ 36, 38.)

20        Through this investigation, agents learned of three distribution cells who were

21  working together as the Aryan Family/Omerta DTO. One of the cells was led by

22  defendants Jesse Bailey and Thomas Carver. (PSR ¶ 37.) Over the course of the

23  investigation, agents seized from members of the DTO an estimated 223 pounds of

24  methamphetamine, an estimated 830,000 fentanyl pills, multiple-pound quantities of

25  fentanyl powder, cocaine, heroin, and marijuana, $338,000 of suspected drug proceeds,

26   

27  [2] Defendant has recommended an 18-month sentence—one-sixth of the lowest term of imprisonment called for under the Sentencing Guidelines as calculated by the Probation Office and the government. The Probation Office has recommended a sentence of 52 months—less than half of the term called for under the Sentencing Guidelines.

United States' Sentencing Memorandum - 2
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and 48 firearms. (PSR ¶ 39.) In addition, during the coordinated arrests of the DTO members in March 2023, law enforcement seized approximately 22 pounds of methamphetamine, 26 pounds of fentanyl in pill and powder form, six pounds of heroin, more than $330,000 of suspected drug proceeds, and 177 additional firearms. (PSR ¶ 40.)

## 2.    Castellanos-Tapia's Role in the DTO

Castellanos-Tapia was determined to be the main source of supply of methamphetamine to Carver and Bailey, the main targets of the investigation. Castellanos-Tapia would provide multiple kilogram quantities of methamphetamine to Carver in exchange for cash, knowing it would be sold to other drug redistributors throughout western Washington. (PSR ¶ 41; Plea Agreement ¶ 8.a.) Indeed, Carver and Bailey were found to have multiple redistributors to whom they provided methamphetamine for re-sale and re-distribution, and law enforcement conducted multiple seizures from re-distributors who obtained their methamphetamine through Carver.

Castellanos-Tapia would typically arrange to meet with Carver to drop off suitcases containing methamphetamine. For example, on November 23, 2022, in a series of intercepted communications, Castellanos-Tapia arranged to meet Carver to deliver

//

//

United States' Sentencing Memorandum - 3
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

"windows" (drug trafficking slang for methamphetamine). An agent conducting

surveillance saw one of the suitcase deliveries:

111th Avenue E. SA Gibb followed TV7 for a short distance until surveillance was lost.

4. At 6:36 p.m., SA McKinney advised that a black sedan had arrived at CARVER's residence and parked in the driveway. SA McKinney observed a male matching CASTELLANOS-TAPIA's build exit the sedan. After a few minutes, the male entered the driver's seat of the sedan and waited. At 6:40 p.m., SA Gibb drove by the residence and observed that the black sedan was TV6. SA Hockenbury advised that CASTELLANOS-TAPIA continued to call CARVER, with no answer. At 6:57 p.m., SA McKinney observed TV6 drive away from CARVER's residence. Real-time location data for CASTELLANOS-TAPIA's phone showed that the device traveled from Puyallup toward Kent, Washington.

5. At 8:06 p.m., SA Hockenbury advised that CASTELLANOS-TAPIA communicated with CARVER via calls and text messages and that they agreed to meet at CARVER's "shop." CASTELLANOS-TAPIA told CARVER that he had "windows." CARVER sent the address of the shop, located at 10908 State Route 162 E, Puyallup, to CASTELLANOS-TAPIA. The shop is located in a gated storage unit complex. SA Gibb established surveillance at that location at 8:25 p.m.

6. At 8:31 p.m., SA Gibb observed TV7 arrive at the storage unit complex and enter the gate. At 8:34 p.m., SA Gibb observed TV6 arrive at the storage unit complex and park outside the gate, where it remained parked for several minutes. SA Hockenbury then advised that CARVER had communicated with CASTELLANOS-TAPIA, who indicated that he was outside. CARVER indicated that he would come outside.

7. A few minutes later, SA Gibb drove by the entrance to the storage unit complex and observed TV7 parked next to TV6 at the entrance. SA Gibb observed a male matching CASTELLANOS-TAPIA's build standing at the open truck of TV6. The male was reaching inside the trunk for a suitcase. SA Gibb observed a male matching CARVER's build standing next to the TV7. Due to darkness, SA Gibb could not see the face of either of the males. At 8:41 p.m., SA Gibb drove by again and observed that TV6 had departed. SA Gibb observed TV7 driving back through the open gate of the storage unit complex. Surveillance was then terminated.

*Excerpt from DEA Surveillance Report of 11/23/22*

Just one week later, on December 1, 2022, Castellanos-Tapia called Carver about

another methamphetamine delivery. Agents again conducted surveillance and saw

Castellanos-Tapia load a suitcase into his car and drive to Carver's residence.

Castellanos-Tapia delivered 28 pounds of methamphetamine to Carver. (Plea Agreement

¶ 8.b.; PSR ¶ 42.) Following the meeting, Carver called Castellanos-Tapia to tell him that

he had delivered only 28 pounds, not the 30 pounds that he had expected.

Days later, on December 4, 2022, Castellanos-Tapia called Carver to arrange

another sale of methamphetamine. (Plea Agreement ¶ 8.c.; PSR¶ 43.) On December 12,

2022, Castellanos-Tapia called Carver and told him that he received only $37,720 in

payment for the methamphetamine, and that Carver still owed $2,280. *Id.*

//

United States' Sentencing Memorandum - 4
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    On December 16, 2022, law enforcement stopped Castellanos-Tapia while he was

2    on his way to deliver another load of methamphetamine to Carver. (Plea Agreement

3    ¶ 8.d.; PSR¶ 44.) Pursuant to a search warrant, agents seized 21.5 kilograms (47 pounds)

4    of methamphetamine inside a suitcase located in the trunk of Castellanos-Tapia's car,

5    which he intended to distribute to Carver:



6
7
8
9
10
11
12
13
14
15
16
17

18    Agents also located multiple receipts for wire transfers to Mexico, ranging in amounts

19    from $500 to $980:



20
21
22
23
24
25
26
27

United States' Sentencing Memorandum - 5
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

On March 22, 2023, law enforcement arrested Castellanos-Tapia at his residence and seized an additional three packages of methamphetamine that were located in a backpack:



**B.      Procedural History**

Castellanos-Tapia was indicted by a grand jury on March 16, 2023, and was arrested and made his initial appearance on March 22, 2023. (Dkt. 1, 95.) On February 26, 2024, Castellanos-Tapia entered a plea of guilty to a lesser-included offense in Count 1 of the Indictment (Conspiracy to Distribute Controlled Substances). (Dkt. 707.)

## II.      BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the

United States' Sentencing Memorandum - 6
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50.

### III.   SENTENCING GUIDELINES CALCULATIONS

**A.   Offense Level**

   **1.   The Base Offense Level**

Castellanos-Tapia repeatedly distributed multiple kilogram quantities of methamphetamine. On just two documented occasions—his distribution of 12.7 kilograms (28 pounds) of methamphetamine on December 1, 2022, and his attempted distribution of 21.5 kilograms (47 pounds) of methamphetamine on December 16, 2022—he possessed for distribution far more than the 4.5 kilograms of actual methamphetamine that triggers the imposition of the highest base offense level under the Drug Quantity Table of USSG § 2D1.1. (*See* Plea Agreement ¶¶ 8.a., 8.d.; PSR ¶¶ 42, 44.) Notably, these totals likely drastically undercount the quantity of methamphetamine that Castellanos-Tapia is responsible for distributing. As the main source of supply of methamphetamine to co-defendants Thomas Carver and Jesse Bailey, he was known to make multiple deliveries to Carver, and he admitted making no less than three to four

1  trips to southern California to pick up drug shipments, receiving one or two suitcases of

2  drugs each time. If, as appears probable, each suitcase contained the same quantity of

3  drugs found in the suitcase seized from him on December 16, 2022, the total amount of

4  methamphetamine he distributed likely reaches well into the hundreds of kilograms. As

5  such, and as stipulated by the parties, the base offense level is 38 pursuant to USSG

6  § 2D1.1(c)(1)). (Plea Agreement at ¶ 9.a.; PSR ¶ 50.)

7  **2.      Adjustments**

8  **a.      Chapter Three Adjustments**

9  **i.      Role Adjustment (Not Applicable)**

10  As found by the Probation Office, the defendant is not entitled to an adjustment as

11  a minor participant in the criminal activity. (PSR ¶ 53 and Addendum.) As explained by

12  the Probation Office, Castellanos-Tapia's role did not make him substantially less

13  culpable than the average participant as he was the main source of methamphetamine

14  supply to the highest-level participants in the conspiracy, the amount of drugs he was

15  responsible for was extremely high, and without his ability to supply drugs, the

16  Carver/Bailey methamphetamine distribution cell of the conspiracy would not have

17  existed.

18  **ii.      Acceptance of Responsibility**

19  The government moves for the three-level decrease available under USSG

20  §§ 3E1.1(a) and (b), because the defendant has assisted the United States by timely

21  notifying it of his intention to plead guilty. (*See* Plea Agreement ¶ 11; PSR ¶¶ 57-58.)

22  **b.      Chapter Four Adjustment**

23  The defendant meets the criteria at USSG § 4C1.1 for application of the Zero-

24  Point Offender adjustment, resulting in a two-level decrease in offense level. (PSR ¶ 56.)

25  **c.      Chapter Five Adjustment**

26  The government agrees the defendant should receive a two-level decrease in

27  offense level as noted in the PSR at paragraph 51.

United States' Sentencing Memorandum - 8
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      Criminal History Category**

Defendant has no known prior criminal convictions. His criminal history category is I. (PSR ¶ 62.)

**C.      Guidelines Range**

The total offense level is 31. (PSR ¶ 59.) This results in a guidelines imprisonment range on Count I of 108 to 135 months. (PSR ¶ 94.)

## IV.      FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence the defendant to 108 months of confinement, followed by a four-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence, and importantly, nothing about the offense justifies a sentence below the guidelines range as recommended by defendant and the Probation Office.

**A.      Nature and Circumstances, and Seriousness of the Offense**

Drugs like the methamphetamine that Castellanos-Tapia distributed have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs defendant and co-

United States' Sentencing Memorandum - 9
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  defendants distributed is difficult to quantify, it is undeniably extensive based on the

2  hundreds of pounds of methamphetamine that he likely distributed. The drugs defendant

3  and his co-defendants spread through the community undoubtedly fell into the hands of

4  long-time addicts, first-time users, and everyone in between.

5  **B.    History and Characteristics of the Defendant**

6      Castellanos-Tapia's history provides little mitigation, and ample reason to believe

7  a departure from the guidelines is unwarranted. Castellanos-Tapia had a fairly normal

8  childhood, and while he grew up poor and his parents separated, he was successful as an

9  adult, graduating from high school and obtaining a law degree. (PSR ¶¶ 69-70, 74.)

10  Castellanos-Tapia practiced criminal law in Mexico from 2009 to 2020. (PSR ¶ 86.)

11      Even after he came to the United States, Castellanos-Tapia was able to secure

12  employment with a company painting boats. (PSR ¶¶ 76, 86.) It appears his motivation to

13  engage in drug trafficking was simply a desire to earn more money than he was earning

14  through legitimate employment. This background refutes any claim that a downward

15  variance is called for by his background and upbringing. Indeed, as a criminal lawyer,

16  Castellanos-Tapia should have had felt some duty or obligation to obey the law, or at

17  least understand the risks and consequences of not doing so.

18  **C.    Need to Promote Respect for the Law, Provide Just Punishment for the**

19  **Offense, Afford Adequate Deterrence, and Protect the Public from Further Crimes**

20      The dangers of drug distribution are not to be taken lightly, and sentences should

21  reflect the seriousness of the crime. Statistics support the need for deterrence. The

22  National Center for Health Statistics, Centers for Disease Control, estimates that, despite

23  a small decrease in overdose deaths nationwide, Washington had an increase in overdose

24  deaths of over 27% in the year ending December 2023. *See* Ken Alltucker, *Drug*

25  *overdoses spiked in these states. But they have dropped elsewhere in the country.,* USA

26  //

27  //

United States' Sentencing Memorandum - 10
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Today, May 15, 2024, available at:
https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed June 14, 2024). The danger is not limited to fentanyl. "The CDC estimated more than 36,000 overdose deaths last year involved psychostimulants such as methamphetamine."

The scale of the problem is massive, with the CDC estimating that 3,526 people died of drug overdoses in Washington state in 2023, a 27.6% increase from the prior year. This is one of the largest increases of any state in the nation, as illustrated by the graphic published by the CDC, below:



National Center for Health Statistics, Provisional Drug Overdose Death Counts, available at: https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm#notes (last accessed June 14, 2024).

**D.     Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

The government's recommended sentence at the low end of the guidelines range would reflect the seriousness of the offense, appropriately promote respect for the law, protect the community, and deter defendant and others who would seek to emulate his

United States' Sentencing Memorandum - 11
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

conduct. Anchoring the sentence in the guidelines calculations has the added benefit of avoiding unwarranted sentencing disparities among similarly situated defendants. *Gall v. United States*, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

**E.   Recommendation of Term of Supervised Release**

Despite defendant's near-certain deportation upon the conclusion of his prison term, the imposition of a term of supervised release is appropriate, and mandatory under 21 U.S.C. § 841(b)(1)(B). Many individuals with prior deportations return illegally to the United States every year. Castellanos-Tapia entered the United States illegally in 2021 after entering for the first time in approximately 2013. Following the easing of COVID-19 restrictions on border crossings, Castellanos-Tapia went back and forth between the United States and Mexico. (PSR ¶ 76.) Imposing a term of supervised release provides an added deterrent to a future attempt at re-entering the United States illegally, for financial reasons or otherwise.

## V.   CONCLUSION

For all of the reasons set forth above, the governments respectfully recommends the Court impose a custodial sentence of 108 months, to be followed by the a four-year term of supervised release, and a $100 special assessment.

DATED this 14th day of June, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*/s/ Max B. Shiner*
MAX B. SHINER/ZACHARY W. DILLON
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Fax: 253-428-3826
Email: max.shiner@usdoj.gov

United States' Sentencing Memorandum - 12
*United States v. Castellanos-Tapia*, CR23-5085-DGE-5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800