HONORABLE JUDGE ESTUDILLO

IN THE UNITED STATES DISTRICT COURT WESTERN DISTRICT
OF WASHINGTON AT TACOMA

UNITED STATES OF AMERICA,           )
                                                            )
                              Plaintiff,           )           NO. CR23-5085 DGE
                                                            )
vs.                                                       )           DEFENDANT'S SENTENCING
                                                            )           MEMORANDUM
STEPHANIE YEPEZ,                         )
                                                            )
                              Defendant.        )
_____)

Defendant STEPHANIE YEPEZ entered a plea of guilty to Conspiracy to Distribute

Controlled Substances, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. §

841(b)(1)( c), which has a maximum sentence of 20 years' custody, a fine of up to $1,000,000,

and a 3-year term of supervised release.

        The underlying facts of this case have been set out in both Probation's Presentence

Report and the Government's sentencing memorandum, so it does not seem necessary to restate

them once again.  Ms. Yepez, by entering a guilty plea, has taken responsibility for the role she

played in the conspiracy for which she has pled guilty, although it should be noted at the outset

that Ms. Yepez was familiar with less than 5 other people who were involved in this criminal

DEFENDANT'S SENTENCING MEMORANDUM
PAGE 1

K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

Karen L. Unger, P.S.
**Attorney at Law**
332 E. 5th, Suite 100
Port Angeles, WA 98362
(360) 452-7688

1    enterprise, as is usually the case when so many individuals are charged in a far-reaching

2    conspiracy.  Ms. Yepez appreciates the fact that she was able to enter into a plea that removed

3    any mandatory minimum sentence, and did so knowing that the Government was going to

4    recommend a substantial prison sentence.  Ms. Yepez also appreciates the sentence

5    recommended by Probation, but will be asking the court to impose a sentence of no more than 24

6    months in prison, for reasons set forth herein.

7          As the court may or may not be aware, Ms. Yepez petitioned for acceptance in the

8    DREAM program, and as such, provided the information that is attached to this Sentencing

9    Memorandum, which includes an autobiography prepared by Ms. Yepez, treatment reports, and

10    letters of support from friends and family.  What all of this information confirms is that Ms.

11    Yepez has had a lifelong struggle with substance abuse, has been able to maintain her sobriety

12    for extended periods of time, only to relapse once again.  Her addictions have taken a serious toll

13    on her both medically and emotionally, which has led her to where she is now - nearly one year

14    of sobriety and immersion into the treatment community.  Ms. Yepez has reached a point in her

15    life where she recognized that if she wanted to get clean and sober, she had to do it for herself,

16    and no one else.  From the attached materials, it is obvious that she has succeeded, so far,

17    anyway, which is how recovery works, one day at a time.

18          Ms. Yepez was not accepted into the DREAM program, for reasons that are never fully

19    explained.  But this rejection did not send Ms. Yepez off track; on the contrary, she accepted this

20    decision and began making plans for her incarceration, maintaining her treatment regime, as well

21    as her employment.   Ms. Yepez entered her plea in a timely fashion so as to save the

22    Government from having to prepare for trial, therefore makes her eligible for a 3-level reduction

23

24    DEFENDANT'S SENTENCING MEMORANDUM
     PAGE 2

**Karen L. Unger, P.S.**
**Attorney at Law**
332 E. 5th, Suite 100
Port Angeles, WA 98362
(360) 452-7688

K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

1    for accepting responsibility when her advisory guideline range is set by the Court.

2           That is not to say that Ms. Yepez's actions should, or will, go unpunished. She comes

3    before this court having taken full responsibility for her actions, and has from the start.

4           It is not hard to understand why the Government has taken the position it has regarding

5    the sentences it has asked this court to impose on the various members of this drug conspiracy.

6    But it is also obvious that Ms Yepez's motivation to involve herself in this conspiracy was her

7    addiction to drugs, not a desire to achieve financial riches or security. As is the case with the

8    many involved in these large conspiracies, the motivation is the availability of the drugs, and

9    little more.

10          Deciding an appropriate sentence is guided by both this defendant's guideline

11   calculation, as well as the requirements of U.S.C. §3553(a), which allows the court to consider

12   each defendant and their circumstances individually, and take into account not only the crime

13   charged, but their individual characteristics and whether or not a lengthy sentence not only serves

14   the interest of justice, but is appropriate for that particular defendant.

15          Given what the court knows about Ms. Yepez, the Court is respectfully requested to

16   consider Ms. Yepez's history, her motivation for her participation in this conspiracy, and the

17   steps she has taken to address her actions and the impact it has on her community since her

18   arrest. It would be a shame to ignore all the work she has done and the strides she has made to

19   address her serious mistakes of the past. It is therefore, respectfully requested that the court find

20   that a sentence of 24 months is fair and appropriate, will reflect the seriousness of the offenses,

21   will promote respect for the law, and will provide just punishment for the offense. A sentence as

22   recommended by the Government of 84 months is not only not supported by her role in this

23

24   DEFENDANT'S SENTENCING MEMORANDUM
     PAGE 3

K:\lwpdocs\criminal 7\yepez\sentencingmemo1.wpd

Karen L. Unger, P.S.
Attorney at Law
332 E. 5th, Suite 100
Port Angeles, WA 98362
(360) 452-7688

1   conspiracy, but essentially ignores the provisions outlined under 18 U.S.C. § 3553 (a) and

2   instead focuses on the overall impact that drugs have on our community and not on the specific

3   characteristics of the person coming before this court to accept the consequences of their choices.

4   It appears that Probation's recommendation is more considered and somewhat less punitive. All

5   of the charts and statistics included in the Government's Memorandum does not tell the court

6   anything about this particular defendant, only why her actions are somehow responsible for the

7   epidemic we are now facing. It is not reasonable to believe that imposing 84 months on Ms.

8   Yepez is anything other than punishment with little consideration for the factors the court is

9   bound to consider.

10      Title 18, United States Code, Section 3553(a), which provides as follows:

11      (a)    Factors To Be Considered in Imposing a Sentence.—The court shall impose a
             sentence sufficient, but not greater than necessary, to comply with the purposes set
12           forth in paragraph (2) of this subsection. The court, in determining the particular
             sentence to be imposed, shall consider—
13

14          (1)    the nature and circumstances of the offense and the history and
                   characteristics of the defendant;

15          (2)    the need for the sentence imposed—

16                 (A)    to reflect the seriousness of the offense, to promote respect for the
                          law, and to provide just punishment for the offense;
17                 (B)    to afford adequate deterrence to criminal conduct;
                   (C)    to protect the public from further crimes of the defendant; and
18                 (D)    to provide the defendant with needed educational or vocational
                          training, medical care, or other correctional treatment in the most
19                        effective manner;

20          (3)    the kinds of sentences available;

21          (4)    the kinds of sentence and the sentencing range established for—

22                 (A)    the applicable category of offense committed by the applicable

23

24   DEFENDANT'S SENTENCING MEMORANDUM
     PAGE 4

     K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

Karen L. Unger, P.S.
Attorney at Law
332 E. 5ᵗʰ, Suite 100
Port Angeles, WA 98362
(360) 452-7688

category of defendant as set forth in the guidelines—

    (i)    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)    any pertinent policy statement—

(A)    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

(1) The court is supposed to first consider the nature and circumstances of the offense and the history and characteristics of the defendant:

The personal history of Ms. Yepez is set out in her DREAM program application,

---

DEFENDANT'S SENTENCING MEMORANDUM
PAGE 5

K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

1  provided in her own words.  Like most people who come before this court having pled guilty to

2  participation in a drug conspiracy, she has a long history of drug addiction, financial challenges

3  and marginal success in life due to addiction.  Ms. Yepez is no different, and yet has now been

4  able to address her addiction, comes to terms with it, and not only help herself, but others as well.

5  As can be seen from the various letters of support (2 additional ones not provided with the

6  DREAM application are also attached to this Sentencing Memorandum) confirm the impact she

7  has had on others.  It is respectfully requested that her sentence allow her the ability to quickly

8  return to her son and the recovery community to continue her work helping herself and others.

9        Next, the court must impose a sentence to

10       (A)    to reflect the seriousness of the offense, to promote respect for the
              law, and to provide just punishment for the offense;
11       (B)    to afford adequate deterrence to criminal conduct;
         (C)    to protect the public from further crimes of the defendant; and
12       (D)    to provide the defendant with needed educational or vocational
              training, medical care, or other correctional treatment in the most
13            effective manner;

14       The court will no doubt impose a sentence that will reflect the seriousness of the offense,

15  will reflect a respect for the law and impose punishment; it is not likely that if the court imposes

16  a sentence for 84 months, or 60 months, or even 24 months, that such sentence will afford

17  "adequate deterrence to criminal conduct."  Courts throughout the nation have been imposing

18  substantial prison time for drug-related offenses and yet the epidemic of drug use and deaths

19  continues unabated.  The truth appears to be that no matter what sentence the court imposes, it

20  will have little deterrent effect in the community.  Obviously, a prison sentence will remove this

21  defendant from the community and therefore prevent her from committing further crimes; it is

22  unclear what kind of educational, vocational training, medical care or other treatment is actually

23

24  DEFENDANT'S SENTENCING MEMORANDUM
    PAGE 6

Karen L. Unger, P.S.
Attorney at Law
332 E. 5th, Suite 100
Port Angeles, WA 98362
(360) 452-7688

1    available in the federal prison system, particularly for women.  A sentence of 24 months will

2    punish this defendant, will remove her from the community for that length of time, and reflects

3    the seriousness of the offense and still considers her personal, individual characteristics as

4    required by statute.

5    　　　　The court is then to consider factors (3) and (4) , the kinds of sentences available, which

6    are outlined in Part D, starting on page 17, of Probation's Presentence Investigation Report.

7    Clearly, the court can impose 24 months' custody (according to Part D, this particular defendant

8    is eligible for a sentence of probation), along with 3 years of supervised release and other related

9    provisions.

10   　　　　Factor 5 involves policy statements from the Sentencing Commission, which do not

11   directly impact the Court's available sentencing alternatives.

12   　　　　Factor 6 outlines the need to avoid unwarranted sentence disparities among defendants

13   with similar records who have been found guilty of similar conduct; in this particular set of

14   defendants few others have yet to be sentenced and none appear to be as similarly situated as is

15   Ms. Yepez and finally, Factor (7), which discusses the need to provide restitution, which is not

16   applicable here.

17   　　　　In closing, the Court is urged to consider this particular defendant, her particular past

18   history, her current situation in her recovery, and the recognition that no matter how much prison

19   time is imposed, it is not likely to affect the overall situation that leads individuals to become

20   involved with drugs, drug abuse, drug conspiracies and the like.  The Government's request for

21   84 months is not supported by the circumstances of this particular defendant, and the court is

22   urged to impose a sentence of 24 months.

23

24   DEFENDANT'S SENTENCING MEMORANDUM
     PAGE 7

K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

Karen L. Unger, P.S.
**Attorney at Law**
332 E. 5th, Suite 100
Port Angeles, WA 98362
(360) 452-7688

1    Respectfully submitted this June 24, 2024.

2                                KAREN L. UNGER, P.S.

3

4

5                    By /s/Karen L. Unger
                     KAREN L. UNGER   11671
6                    Attorney for Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT'S SENTENCING MEMORANDUM
24   PAGE 8

K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

1

2

3

CERTIFICATE OF SERVICE

4

     I hereby certify that on June 24, 2024, I electronically filed the foregoing with the Clerk

5  of the Court using the CM/ECF system which will send notification of such filing to the

attorney(s) of record for the United States.  I hereby certify that I have served the attorney(s) of

6  record for the United States that are not CM/ECF participants via telefax.

7

8

     / Karen L. Unger

9      KAREN L. UNGER

      332 E. 5th Street

10     Port Angeles, WA 98362

      Phone: 360-452-7688

11     Fax:   360-457-0581

12

13

14

15

16

17

18

19

20

21

22

23

24

**DEFENDANT'S SENTENCING MEMORANDUM
PAGE 9**

K:\1wpdocs\criminal 7\yepez\sentencingmemo1.wpd

**Karen L. Unger, P.S.**
**Attorney at Law**
332 E. 5th, Suite 100
Port Angeles, WA 98362
(360) 452-7688

# KAREN L. UNGER, P.S.

Attorney at Law

332 East Fifth Street, Suite 100
Port Angeles, Washington  98362
(360) 452-7688
fax (360) 457-0581
karenlunger@gmail.com

April 22, 2024

Western District of Washington DREAM Court
Review Committee Members

    Re:  United States v. Stephanie  Yepez
        No. CR 23-5085DGE
        Referral for DREAM Court Program Eligibility

Dear Review Committee Members:

   This letter is submitted on behalf of Stephanie Yepez and her request to participate in the DREAM program.  Ms. Yepez is currently 43 years of age, and is a woman who has been addicted to drugs starting in her early years  and continuing on and off throughout  her adult life.  She has entered a plea of guity to the charge of  conspiracy to deliver a controlled substance, under 21 USC § 846 and 841 (b)(1)(c).  As discussed below, her role in the offense was fueled by her long-standing addiction to drugs and alcohol, which was interrupted by periods of sobriety.  Since her release from detention shortly after her arrest, she has been committed to her sobriety as never before, and has remained sober despite the triggers she has faced that ended her periods of sobriety in the past.  Stephanie's life is full of prior abuse, violence, addiction and loss, all of which were  coped with through the use of controlled substances and alcohol.  This time, however, she has faced her losses by accepting the support of the sober community, taken responsibility for her criminal behavior by pleading guilty, and yet remained committed to a better life.

   Ms. Yepez is eligible for DREAM Court and therefore should not only be considered, but accepted so she can continue in her recovery.  She has the support of those that know her as an addict, which is what she admits she is, and will be for the rest of her life.  But this time her recovery seems to be holding, as she has addressed the triggers that ended her periods of clean and sober living, having been confronted with the death of close friends/family members that ended those periods in the past.

   Accordingly, it is our hope that the Executive Team will recognize that  Ms. Yepez is an excellent candidate fo the DREAM Court program, who meets all of the qualifications and is committed to successfully completing the DREAM Court requirements.  This commitment to succeed is evidenced by her continuing success in treatment, where she is now months sober, as confirmed by the various letter of support, including one from retired Judge Jay B. Roof, who knew Ms. Yepez when she was a participant in the Kitsap County Drug Court.  These numerous letters testify to Ms. Yepez lifestyle change and determination to succeed this one last time.

Western District of Washington DREAM Court
Review Committee Members
April 22, 2024
Page 2

      Accordingly, it is our hope that the Executive Team will recognize that  Ms. Yepez is an excellent candidate fo the DREAM program, who meets all of the qualifications and is committed to successfully completing all DREAM requirements.  As mentioned above, this commitment to succeed is evidenced by her continuing success in treatment despite challenges that in the past have led to relapse.

      A.     Ms. Yepez is not charged with a serious violent offense or other disqualifying offense, and she has no history of serious violent offenses.

      As set forth in the indictment, Ms. Yepez  was charged along with 26 other individuals with conspiracy to distribute controlled substances, specifically in count 1, to which she entered a plea of guilty on February 20, 2024.   The additional count 4 of the indictment will be dismissed at sentencing, which can be reset to allow for the consideration of this application (it should be noted that Mi-Young Park, after completing her interview in preparation for her presentence report, inquired as to whether or not Ms. Yepez had applied for DREAM Court, as contained in the attached email from Ms. Park).  This offense did not involve any firearms of any kind; she was an end redistributor and played a minor role in the conspiracy.   As discussed below, Ms. Yepez has admitted  that she is an addict motivated by her addiction to participate in the drug conspiracy.  Given that all of her contact with law enforcement was related to her addiction, there can be no doubt that it was this addiction to drugs and alcohol that directly contributed to her involvement in the current offense.

      B.     Background and History of Drug Abuse

      Ms.  Yepez  was born in Honolulu, Hawaii on November 3, 1980, one of two children. She moved with her parents in 1982 to Washington when her father's military duty ended after serving for 20 years, and settled in the Bremerton area.  Her younger brother was born in 1983 and her parents are still married.  As outlined in her biography, which is attached to this application and letter, she was exposed to controlled substances early in life, and even used methamphetamine with her mother.  Her younger brother was killed in a motor vehicle accident, yet but one of the tragic events in her life that led to relapses and on-going substance abuse.  She was the subject of childhood sexual abuse and sexually assaulted as an adult.   She lost the father of her son to a drug overdose and was subjected to domestic violence over an extended period of time.  Rather than repeat what is contained in Ms. Yepez's biography, I would ask the Committee to review, in her own words, the information contained in her statement, all of which was shared with Ms. Park, and no doubt which led to her query as to whether or not Stephanie sought acceptance into the DREAM program.

      C.  Ms. Yepez's Present Status and the Status of the Pending Charges

      Ms. Yepez was released on bond and remains out on release conditions, which include random urinalysis, regular contact with Pre-Trial Services and active participation in treatment. The GPS monitoring requirement was removed after she demonstrated strict compliance with all conditions of her release.  She is committed to her sobriety and has the support of her treatment

Western District of Washington DREAM Court
Review Committee Members
April 22, 2024
Page 3

provider, her family and, most importantly, herself. There is no doubt that her addiction directly contributed to her involvement in the current offense. She is hoping to be accepted in the DREAM program so she can continue her treatment regime, where she is now a group leader and an example to others that it is possible to maintain sobriety even after years and years of addiction. She has the support and respect of her treatment providers and, if able to participate in the DREAM program, she can continue in her recovery. The most important consideration, for Ms. Yepez, is the welfare of her son, whom she will be able to continue to care for, if she is able to participate in the DREAM program.

    D. Eligibility for the DREAM program.

    Ms. Yepez meets all of the criteria for participation in the DREAM program.

    Ms. Yepez's life has been seriously impacted by her addiction to drugs. She has relapsed numerous times after being able to remain sober in the past, but never accepted her addiction as she has today. This acceptance is evident in her commitment to sobriety and the substantial steps to see that she is successful in her sobriety. Stephanie deserves a chance and welcomes the opportunity to benefit from an alternative to incarceration program like DREAM. The hard work she has done thus far is confirmed by both her treatment records, the recommendation from her treatment counselor, and the many letters of support from those who have known her for both a brief period of time, and for years and years. Stephanie has previously entered a guilty plea, knowing the consequences of a prison sentence and is prepared to face the outcome of her decision, yet hopes that the work she has done, and the support she has demonstrated from those in the community, will make her a good candidate for DREAM Court. She has the will, and a demonstrated track record, to succeed.

    Please feel free to contact me if you have any questions about Ms. Yepez's application or need additional information.

        Very truly yours,
        KAREN L. UNGER, P.S.

        Karen L. Unger

attachments

To whom this may concern,

My name is Stephanie Jean Yepez. I was born to Mark and Sherrie Thoman November 3rd, 1980 in Honolulu, Hawaii. My dad was stationed there until 1982 when we moved back to Washington. I had one brother who was 3 years younger than me. My mom worked in the shipyard in Bremerton and my dad served 20 years in the navy. I had a pretty good childhood. My parents were strict, but I know it's because they loved me and they always wanted the best for me and my brother. I remember growing up thinking my dad wasn't my real dad. And later on, in life at the age of 22 I found out that he indeed was not my biological father. I grew up around mass alcoholism, my parents, their friends, and coworkers. There were always parties at our house where everyone was intoxicated and that's how I experienced my first taste of alcohol at the age of 5 or 6. When I was 11, I was molested by my mother's cousin whom my brother was named after. My parents put me into counseling when I started acting out and not listening. There were family members that didn't believe me, and I think that was worse than what my cousin actually did to me. I remember finding drugs on the kitchen counter when I was 13 and I later found out that it was my mothers, and it was meth. I also found marijuana and a pipe in my parents' basement, and I took them and tried it with some neighbor kids then got caught with the pipe at school and that led to my first suspension. I was acting out in all ways, hanging out with what I thought were the cool kids, stealing cigarettes and liquor from my parents. Stealing from stores, which I finally got caught at the age of 14 and that landed me in juvenile detention. This is also the age that I started running away because my parents were too strict, so I thought. I ran away to the lady's house that I babysat for, and my parents let me move in there as long as I went to the alternative junior high. This is where I tried meth for the first time. Things didn't last long for me there and I started running away again. While on the run I met a man I started dating who was 23 and I was 14. He talked me into returning home and while my parents weren't happy with the age gap they allowed the relationship because they didn't want me running away again. We were together until he got arrested for a robbery. Again, I was running away off and on and doing drugs off and on. Between the ages of 14-16 I had been drinking and doing meth, weed, acid, and mushrooms. When I was 16 and a runaway, I met my daughters father Kristafer Whitcher, who was 21. He started beating me up within months of us being together and I started trying to get pregnant because he had told me he'd never hit me if I was pregnant. This is also the age when I first started getting high on meth with my mom. My boyfriend would sell it to my mom and her friends. January of 1998 I was 17 and I got a dirty ua for meth and my probation officer told me I'd go back to the detention center if I got another. I ended up getting pregnant a couple weeks later but didn't find out till may. The whole time my daughter's dad was beating me. I could handle the physical abuse, I always fought back.

Really it was the mental and verbal abuse that ate at me. I got used to him telling me no one would ever love me because I was a whore, can't turn a hoe into a housewife; he even told me that I had HIV now that wed been having sex for the entirety of our relationship, implying he gave it to me. Before he found out I was pregnant and after I had my daughter, I walked around with black eyes, busted lips, bruises, and scratches all over my body. I gave birth to our daughter, Danakai, November 5th ,1998 and I found out I was pregnant again when our daughter was 9 months old, and he was in jail on his way to prison for burglary. I decided to have an abortion because I could barely take care of me and one child let alone 2, and he all of a sudden was claiming that he didn't think our daughter was his. So, I quit talking to him and was finally able to leave him while he was locked up. I continued to use drugs and moved out to Kingston on the Indian reservation with a friend. I got pulled over one evening with my daughter and got arrested with drug paraphernalia and my parents had to come pick Danakai up because I was heading to jail. My parents told me they wouldn't give her back until I got clean. I couldn't get clean for any substantial amount of time and so when her dad got out of prison he took her because paternity had been proven and he was clean for the time being. It was long after he got her that he started using and selling drugs and he'd let me see our daughter but I basically had to whore myself out to him in order to see my child unless I saw her at my parents house. We would try to get back into a relationship again but the verbal and mental abuse was way worse to the point that I started cutting myself in front of him when he'd be talking his shit to me. In March 2001 I met My sons dad Joseph Vandergriff and continued to do and sell drugs. In February 2002 we were raided for selling drugs and both sentenced to a DOSA sentence. Served 30 months DOSA in WCCW in Purdy. When I was released in may of 2003 I was clean for a few months and I started to go to Bryman school for medical billing. I started getting high again and told on myself to my probation officer because I wanted to get clean and he set me up with outpatient services that they had at the DOC office. I started dating a man named Chuck Jacobs and we got engaged. He started getting high and put hands on me and I left him before it could escalate any further. I finished my schooling  and then Joe got out of prison and we got back together. This was in the summer of 2004. Our relationship was on and off again for a couple of years but we were both still clean. In the summer of 2006 I got a DUI and that's the first time I remember ever having to have a slip signed for the court system. I went to meetings but didn't understand the concept of recovery. I also got pregnant with Joseph that summer and had another abortion because we were just getting back together and he said a pregnancy wasn't going to help the relationship. I didn't want to have the abortion but I also wanted to stay in the relationship so I went through with it. There were complications with the procedure that required me to have it done twice. I know he had no idea what it did to me mentally and I was still so immature that I could only express myself passive aggressively. Nevertheless we stayed together and started to build a life together.

We both got joint custody of our other children, and we were both working. He was also selling large amounts of marijuana on the side. We had close relationships with our families and were very involved in our kids and their schools as much as we could be since we were both convicted felons. On December 30th, 2008 my families world was rocked by the death of my little brother. I started drinking heavily. Being able to drink a whole fifth of vodka by myself wasn't unheard of. Like I said earlier, I wasn't familiar with the concept of recovery. I thought I was clean because I wasn't using meth. I never considered myself to have a problem with alcohol even though I had gotten a dui. I was just functioning. I got pregnant with my son a week after my brother died and found out late February while nursing a hangover. That ended my grieving through a bottle. I gave birth to my son on October 18th,2009, 2 days before my brothers' birthday. When I was 22 I had found out that my dad wasn't my biological father, well while I was pregnant my mother heard that my bio dad had another bout of cancer and with my brother just passing my mom wanted to make sure it wasn't anything I needed to be worried about inheriting so she finally reached out to him. He wasn't interested in meeting me, I guess he just felt like a sperm donor and didn't want to disrupt the life he had with his family. After my only brother died and finding out I had a younger brother and sister it was a little heartbreaking but there's nothing I can do but let it take up space in my head which it still does. While I was pregnant my sons dad started using and selling oxycontin and Percocet. In the last trimester of my pregnancy I was prescribed Percocet due to unexplained pain in my chest that I had for the entirety of the last 3 months, then complications during birth , my tubal ligation and then complications in the healing of the incisions had me on prescribed pain meds for4-6 months after birth. After having James I was using more than my dosage because of him selling them and because I was prescribed meds I still didn't think I had a problem and still considered myself to be clean because I hadn't touched meth since early 2004. Life went on like this for a couple more years then in early 2013 I had a live in nanny and I walked into her room and she hid something and I looked and it was a meth pipe and I grabbed it and hit it like I had never stopped. Within a few months my relationship fell apart and I left James with joe and left to go use and sell drugs on my own. In February 2014 my house was raided for deliveries and in June 2014 I was given the opportunity to enter into Kitsap County Drug Court ran by Judge Jay Roof. That is when I got to learn what recovery was all about. I was successful in the program until September 2015 when I was terminated for being in a relationship with another participant. They have since changed those rules and me and my husband actually asked and had Judge Jay Roof marry us years after we were released from prison. When I was released I went back to chairing the narcotics anonymous meeting that I chaired before I went to prison. And let me tell you the difference between going to prison when I was 21 and still had dope in my system and going after being clean for 15 months is tremendous. I was also mentally more mature 13 years later,

and I knew that I wanted to maintain my clean time, so I stayed to myself and went to meetings while I was incarcerated and as soon as I was released I was right back into the recovery scene. When I was in work release I got hired by MOD Pizza which I got to represent at a reentry seminar and we received an award for being one of the biggest second chance hirers in the state. I started out as a squad member but ended as an assistant general manager. I worked 5 ½ years for them. I got to open and train many stores for them and I got to hire and offer a second chance to many people with a colorful background like mine. I've worked in many fields in my life but working for MOD was definitely my favorite job. Theres a culture there and my past doesn't define who I was. I got the opportunity to show the community that I was more than a drug addict and convicted felon. I got full custody of my son while employed there because his dad was still in active addiction. In May 2018 Judge Jay Roof married me and Trinidad Yepez in front of 150 friends and family. In September 2020, during covid my son started going through things, saying he hated himself ,his life, saying he wanted to die, and he tried self-harming by wrapped cords around his neck. I took him to the emergency room and that got us engaged with Kitsap mental health services. A month later he ran away, and I called the cops and my husband went and found him and forcefully brought him home because he was fighting him. The cop was informed on the self-harming incident and he questioned James and he just told him that he didn't want to do what we said. Because of the self harming I had finally reached out to James dad who hadn't seen James in 2 years because he didn't want to comply with the parent plan. I told him I was willing to work with him if he'd start out with the hair follicle test. He responded a week later and his roommate brought me a copy of a clean hair follicle test, that was Monday October 5th, that Sunday the 11th was the day my son ran away and a half hour after the cop left I got a call from my brother in law Tyler Vandergriff, telling me that James dad had been found dead in a hotel room. This was 1 week before James 11th birthday. With the help of my sons mental health counselor I was able to tell him. It was one of the most devastating things I've ever had to do in my life. Shortly after this my son told one of his counselors that my husband had hurt him and it was in reference to the night he ran away. CPS was involved the cop that came out that night came back out and talked to my son and everything ended up being cleared up with my son telling the truth that my husband didn't throw him to the ground that they both had fallen down the hill into our yard. Another cps claim was made against James claiming sexual misconduct on my brother in laws step daughter. A month later Ty my brother called me to tell me his step daughter admitted to lying about it all. With the death of James dad and all the CPS claims I turned to alcohol heavily again. In December 2020 I left my husband and moved into my own place with James. After being clean since June 2014 I relapsed in February 2021 on meth and heroin. I used for 2 months then with the help of friends in recovery I got clean. I was clean for only a month then lost another close friend to an

overdose and it sent me over the edge and I couldn't stop getting high and I don't think I wanted to. The only way I knew how to deal with death was drugs and alcohol. Within a month I lost my job and started supporting myself by selling drugs again. I started seeing someone named Jason Hanson who I later found out to be a narcissistic sociopath. He physically, mentally, verbally, emotionally, and sexually abused me. It was psychological warfare being with him. I can't tell you when I started accepting the abuse and thinking everything, I did was wrong. He raped me down in Vegas. I asked him to stop twice because he was hurting me and he didn't until he was finished, and over half of our sexual encounters I was incoherent. I would wake up and I'd be naked from the waist down and he'd be gone, sometimes with my car and my phone, and I'd tell him not to have sex with me if I didn't wake up, but he continued too and he'd tell me I was making a big deal about nothing that I was tripping because I was his girlfriend. One time I woke up and he told me he didn't have sex with me while I was sleeping like I should give him a pat on the back for doing the right thing. The whole time we were together he was sleeping with multiple other people but then accusing me of a wide range of things. We were on and off again for almost a year and it wasn't until the rape in Vegas that I had finally had enough. Actually, it was the drive back to Washington. He beat me up for most of the drive and I finally told him I wouldn't drive him any further and he had someone come pick him up in Ellensburg. Prior whenever wed break up he'd stalk me sending me texts telling me to go home. I had multiple videos from my doorbell camera of him wandering around my house with me sleeping inside and because of this when I got home. I blocked him on all social media accounts and phone. I changed my number but that didn't matter. He'd always get my new number somehow. The first 3 months that I was back from Vegas I probably only stayed at my house 7 times because I was afraid of him and what he'd do but that was also because I had reported him for rape. One of my had noticed I was different when I got back from Vegas and I told him about the incident and all the other times and he told me I needed to report him. A week later he was hanging out with Jasons other ex-girlfriend, and she told him that she had woken up to him having sex with her from behind because he'd broken into her house while she was sleeping, and this was 3 days after we got back from Vegas. We eventually got together, and both made reports. The cops went to his house to question him but he wasn't there. That's when he was heard to have said he wouldn't go to prison for rape, he'd go for murder. He said he had 2 guns, one with each of our names on it and that was a big reason I didn't stay at my house. He is currently incarcerated for an elude because he tried getting away from the cops when they were chasing him because he thought he was wanted for rape. its still an open case because another girl is coming forward when she gets back to Washington. In active addiction I just ran from everything, and I was afraid to get a no contact order but I finally got one in February because one of my

friends in cedar creek facility told me he was asking him for my number and where I worked and I knew he was getting ready to be released, so I finally got the nerve to protect myself.

Before I found out I was indicted I had been wanting to clean for over a year and a half. I really didn't know how I was going to be able to handle the new trauma in my life without drugs and alcohol and didn't want to think about it either. I made several detox bed dates that I never made it to, and I knew I was headed for trouble one way or another I had asked my brother in law to take my son in2022 because I didn't want him to be involved in a raid because that's the way my life always ended when I relapsed, in hand cuffs. When I found out I was indicted I ran for a couple months trying to get my affairs in order and I was trying to get a lawyer. I had talked to a lawyer who told me to get a drug assessment and get character reference letters together. I had an assessment scheduled for May 25th at Olalla recovery center which was the day after I was arrested. Being in recovery before I had heard people say that when they were on the run and finally caught, they never felt such a sense of relief and I finally understood and felt it. I was mentally and emotionally exhausted. The gravity of this whole situation is huge. I never pictured myself in this situation and I never grew up thinking or wanting this for myself or my family. There isn't anything that I've done or had in the last 3 years of active addiction that makes any of this worth it. I was told that there weren't any victims in my crime, but I beg to differ. Even though I was sick myself actively using I was helping keep many other addicts sick because I was supplying them. My actions helped keep parents away from their kids and families. The community as a whole suffers from any and all drug distribution. On any scale, big or small. My parents were right, I didn't have to be a part of it, but I was. I've embarrassed and disappointed my family yet again. What really kills me, is that my son has already lost one parent due to drugs and while I'm not dead, he still stands to lose me to a prison sentence. It sucks that these aren't the things that run through my mind when I'm in active addiction. I've come to realize that I don't handle death well. Death has been my biggest trigger. I'm learning how to deal with death clean and sober. I've lost 3 people close to me in this last year and I'm learning that I can get through anything without picking up drugs or alcohol. Being in recovery last time I didn't fully commit, I didn't take all the suggestions. I didn't reach out and ask for help. This time around I'm doing all the things that are suggested to maintain long term recovery. There are 5 things: 1 get a sponsor, 2 work the 12 steps, 3 go to meetings, 4 be of service/get a service position, and 5 read the literature. I'm actively working a program an have a sponsor and am working steps, I go to meeting, I'm apart of activities committee which helps put together clean and sober functions for our area. I was part of Clean and Free registration committee, which is a huge narcotics anonymous convention held in Ocean Shores every year. I'm also very involved with Kitsap County Drug Court Alumni. I am one of the housing managers for our new women and children's house.

One of my best friends is the president of the alumni association and she suggested I get involved and so I've been to every business meeting since my release in May. Next I'm getting orientated to be able to go into treatment centers and tell my story or as we say in the rooms of narcotics anonymous, share my experience, strength and hope. I did my drug assessment at west sound treatment center in Bremerton and just graduated last month and my counselor asked me if I'd like to come in with another NA participant to share our stories with their IOP groups once a week. I've been engaged in mental health counseling to try to work through past issues and the most current traumas that I succumbed to this last round of active addiction, and actually writing this autobiography is going to be used in my counseling sessions because writing all the rough drafts brought up a lot more than I thought it would. I've made mistakes that I can't change, but I'm trying to change so I don't make the same mistakes and whatever my outcome whether I'm allowed to enter into dream court or not I'm planning on having long lasting recovery with the help and support of my friends in the 12 step programs and my loving family that may not approve of the mistakes and life choices I've made but they're supportive of me as long as I'm doing the right thing. I am asking to be given the chance to prove that I can continue on the path that I started when released last may. Thank you for your time and consideration.


Sincerely,

Stephanie Yepez

# Certificate of Completion

## Awarded to:

### Stephanie J. Yepez

For the Successful Completion of:

ASAM Level 2.1 Intensive Outpatient
ASAM Level 1.0 Outpatient

Treatment Complete

On

March 28, 2024



West Sound
**Treatment**
Center

*Improving Lives*
*& Restoring Hope*

Kelley Lovelace, SUDP

# DISCHARGE SUMMARY

| Client name: Stephanie J Yepez | Admit Date: | | 6/15/2023 | Release Date: 3/28/2024 |
|---|---|---|---|---|
| Type of Service: | Level 2.1 Intensive outpatient and Level 1.0 Outpatient | | | |
| Reason for Discharge: | Successful Completion | | | |
| DSM V Diagnosis at Discharge: | F15.20 Other stimulant dependence, uncomplicated F10.20 Alcohol dependence, uncomplicated F11.20 Opioid dependence, uncomplicated F12.10 Cannabis abuse, uncomplicated | | | |

| Summary of Patient's Progress Toward Each Individual Service Plan Goal and Objective |
|---|
| Ms. Yepez completed individual service plans that addressed boundaries, self-esteem, stress management, defense mechanisms, gaining recreational activities in recovery, and relapse prevention planning. Successful completion of IOP/OP requirements and progress through the stages of change, negative urinalysis test results and attendance and participation at all require group sessions. |

## ASAM 6 Dimensional Summary

| DIMENSION 1: Withdrawal Potential: |
|---|
| at admission Ms. Yepez reports no history of withdrawals from Opioids and methamphetamines. Client reports 1 prior MAT program in the past and is interested in a referral to a MAT program. She reports her last use of 5/25/2023. No current withdrawal management services are needed at this time.<br><br>At Discharge: Ms. Yepez exhibited no signs or symptoms of intoxication or withdrawal. She reported she is on the MAT program and is on Vivitrol through PCHS. |

| Risk Rating: | 0 - No symptoms or symptoms are resolving |
|---|---|
| Recommended LOC: | 0 - No WM Services Indicated |

| DIMENSION 2: Biomedical Conditions and Problems: |
|---|
| at admission Ms. Yepez reports that she has medical coverage through Washington state. Client reported, she has a medical doctor through PCHS. Client reports no medical conditions that would interfere with treatment. She reported a physical injury to her finger. She reported "Finger was ripped by a car speeding away due to me trying to head but someone when I was high." Client needs to engage with primary to stablish regular medical care. Client appears to be in adequate physical health and client reported her health is "average".<br><br>At Discharge: Ms. Yepez followed through with all medical appointments and managed her medical concerns well. She should continue to see her primary care doctor for all medical needs. |

| Risk Rating: | 0 - No biomedical concerns |
|---|---|
| Recommended LOC: | 0 - No Services Indicated |

| DIMENSION 3: Emotional/Behavioral/Cognitive Conditions/Complications: |
|---|
| at admission Ms. Yepez reported a history of physical, emotional, and sexual abuse. Client reported other significant life events such as AEB: "Being raped for a year by my ex." Client reported a mental illness diagnosis of "PTSD, bipolar, severe depression, severe anxiety, borderline personality disorder." Client needs to engage with a mental health provider and also needs to engage with substance abuse treatment to learn about the harmful impacts' substances had on her mental health. Client reports her overall mental health is "poor".<br><br>At Discharge: Ms. Yepez has made significant behavioral changes that will only enhance her recovery and help her maintain sobriety after treatment. |

| Risk Rating: | 0 - No Problems or Stable |
|---|---|
| Recommended LOC: | 0 - No Services Indicated |

| DIMENSION 4: Readiness for Change: |
|---|
| at admission Ms. Yepez appears to be in the Preparation stage of change AEB: "I don't want to loose the relationship with my son who is 13 years old." Ms. Yepez would benefit from learning and being reminded of the negative consequences behind her substance abuse and continued use. Client needs a weekly structured program to increase her internal |

**Current Medications:**
ACYCLOVIR

**Clinician Signature:**    *Kelley Lovelace SUDP*    **Date:** 3/28/2024

Kelley Lovelace-SUDP    Clinical Supervisor
Kelley.Lovelace@wstcs.org

## Chemical Dependency

☐ Assessment ☐ Enrollment ☐ Noncompliance ☒ Completion ☒ Discharge

☐ Deferred Prosecution ☒ Compliance ☐ Defendant has returned to compliance

| | | |
|---|---|---|
| Defendant Name: | Stephanie J Yepez | Case # unknown |
| D.O.B. | 11/3/1980 | |

**Documents Reviewed (required for evaluation to be accepted):**

☐ Driving Abstract
☐ Police Report/Complaint
☐ Defendant Case History (DCH)
☐ Prior evaluation date and diagnosis

**Diagnostic Assessment with DSM 5 Diagnosis Code (Assessment Only):**

**Treatment Recommendations and Duration:**
Stephanie J Yepez's Monthly Status Report: Compliance

Compliance requires: 12-Step Meeting Attendance, Group Counseling Attendance, Individual Counseling Attendance, Negative Urinalysis, and Financial Compliance; (please describe):

Ms. Yepez was assessed on 6/12/2023 and enrolled into level 2.1 intensive outpatient on 6/15/2023. Ms. Yepez completed completion of IOP requirements and moved to level 1.0 on 9/4/2023.

Ms. Yepez has successfully completed treatment as of 3/28/2024 and has been discharged from treatment.

Discharge date: 3/28/2024

*If Stephanie J Yepez is discharged at any time a new assessment will be needed to determine appropriate level of care.*

If Stephanie J Yepez has a referring agency involved, the referring agency will be notified by phone, email, or fax.

| Treatment | Status | Attnd | Ex/DA | NS | Pos | Neg |
|---|---|---|---|---|---|---|
| DA - Outpatient 1.0 | active | 2 | 0 | 1 | | |
| DA - Outpatient 1.0 | active | 2 | 2 | 0 | | |
| Individual Session (60 Min) | active | 1 | 0 | 0 | | |
| Case Management (15 Min) | active | 0 | 0 | 0 | | |
| Treatment Plan | active | 0 | 0 | 0 | | |
| Pre-Assessment Paperwork | active | 0 | 0 | 0 | | |
| UA (2/week) | active | 8 | 0 | 0 | 0 | 7 |
| DA - Outpatient 1.0 | inactive | 0 | 0 | 0 | | |
| DA- IOP 2.1 | inactive | 0 | 0 | 0 | | |
| DA- IOP 2.1 | inactive | 0 | 0 | 0 | | |
| UA Standard | inactive | 0 | 0 | 0 | 0 | 0 |



**Karen Unger <karenlunger@gmail.com>**

---

## Yepez
1 message

---

**Mi-Young Park <Mi-Young_Park@wawp.uscourts.gov>**                                    Thu, Apr 11, 2024 at 1:33 PM
To: "karenlunger@gmail.com" <karenlunger@gmail.com>

Hello Karen.

I was wondering if you have applied for DREAM for Ms. Yepez?

Thank you.

Mi-Young Park

United States Probation Officer

Phone: (206) 276-9433

# Judge Jay B. Roof, Ret

### Mediations, Arbitrations and Trial Court Consultant

April 17, 2024

Jenice LaCross
904 Dwight St.
Port Orchard, WA  98366

    Re:  Stephanie Yepez

Ms. LaCross,

I am writing to support Ms. Yepez's application to be admitted to the D.R.E.A.M. Court.  I am familiar with Ms. Yepez from my time as the Kitsap County Drug Court Judge, where I presided for 17 years.  We formed our court from scratch and eventually became a Mentor Court as recognized by the National Association of Drug Court Professionals.

Ms. Yepez was one of our drug court participants.  When she was with us, we had a strict no fraternization policy.  Because she developed a romantic relationship with another participant, I terminated her from our program.  In 2015 I sentenced her to prison, and she completed her sentence.  After she was released, our Drug Court team relaxed the no fraternization policy and ironically, I presided at Ms. Yepez's wedding.

Ms. Yepez was clean for 5 years, but she relapsed when her son's father died of an overdose and she revered to active addiction for a couple of years.  Now, she is in compliance with all her court ordered requirements, treatment protocols and probation.  I understand that even probation has recommended her for D.R.E.A.M Court.  In addition, she attends and actively participates in our Kitsap County Drug Court Alumni Association, an organization I helped form to encourage Drug Court members to give back to the community that made Drug Court possible.  Ms. Yepez also works fulltime and is a fulltime parent.

While none of us can guarantee anything where addiction is concerned, I am satisfied that Ms. Yepez is in the best position in her life to succeed.  Please favorably consider her application.

Sincerely,

Jay B. Roof

PO Box 965 Poulsbo, WA  98370  -  jayroof@comcast.net  -  360-779-4388

To whom it may Concern,                    2/8/24

Im writing this letter on behalf
of Stephaine Yepez. I met Stephaine
at the end of Spring 2023 when
She started outpatient treatment at
Westsound. we Have become Close
Friends. Since Stephaines release she
Has not only followed & obeyed the
Law but Hasn't slipped up once in out
patient. she Holds down A full time
Job & is reliable for that Job.
Stephaines determination to build &
Change her life is an amazing thing
to be a part of. Stephaine helps out so
many people in our N.A Community
Not Just with rides be being an example
to the New Comer. I feel that She
is A Great Cannadite for dream Court.
She will Thrive and Continue to keep
building the life that she Has built
thru Far. A little about myself my
name is Ryan Warsalla I'm a Current
Participant in Kitsap County drhy court.
I Never thought I'da ever get Clean
after 25 years of Drug use and
living the life style. But Drug Court
WAS the best thing to Happen to me.
Im Clean, Have my Children, and am
engaged. None of this would be possible
without the oppertunity with Drug Court.
So Please Consider Dream Court for →

This letter is on the behalf of stephanie
Yepez. Iam Patrick Fick and have known
her for many years and I can say that
without a doubt she has totally turned
her life around and has become a productive
member of society. In my opinion prison
wouldn't do anything but set her back
in life and recovery. Since these charges
she has been doing everything she can to
better herself. She continues to work
on her recovery daily whether shes
going to treatment, going to meetings or
working her 12 steps of N/A. She seems
to make sure she is always focusing
on her recovery. When she isn't working
her butt off at work or at the gym.
She is doing amazing and I couldn't
be more proud.

Patrick Fick

If you have any questions
feel free to call anytime
360 689-2912

   

Your Honor,

I am writing to express my support for Ms. Yepez's intention to engage in the DREAM Court program, a matter she has brought to my attention. Before Ms. Yepez told me about this program, I had no frame of reference as to what it was, so I did my own research. From my research I understand that this program is very exclusive. My research also shows me that this program's objective is to rehabilitate participants with criminal backgrounds and help coerce them into a healthier lifestyle and turn them into functional members of society. This objective specifically is imperative to many of my participants and clients such as Ms. Yepez.

As I researched this program, I researched other related statistics. For example, I found that less than 20 percent of incarcerated people receive formal SUD (substance use disorder) treatment. I also found that 75 percent of treatment group participants relapsed within their 5-year post release check ins (Chamberlin et. al. "Illicit substance use after release from prison among formerly incarcerated primary care patients: cross sectional study" 19 February 2019). This is concerning to me especially when the options for participants are to go to prison for years, or struggle to become eligible for programs such as DREAM.

When it comes to Ms. Yepez's desire to engage in this program I support her whole heartedly. From the limited engagement I have had with her, as a secondary counselor in her treatment, she appears committed to transforming her life. She is engaged in local NA/AA programs, receiving a chair position in a women's meeting, she is a drug court Alumni, as well as, recently becoming a house manager, the same SUD treatment program I am proud to work for, as well as mental health treatment. She is making every effort to change her behavior and atone for all that she has done. This proves to me, in my clinical opinion, that she is taking her recovery very seriously.

During my private discussion with Ms. Yepez about her desire to engage in Dream court I asked her about the importance of this specific program, in terms of her recovery. She replied, "it would allow me to stay connected in my recovery and begin working towards my long-term goals". As she most likely outlined to you already, she has been very vocal about wanting to be an advocate for domestic violence and sexual assault survivors, primarily women. She is working to be the best mother she can to her teenage son, who unfortunately lost his father to the disease that his mother struggles with every day. Not only would DREAM court be aiding in Ms. Yepez's recovery, but her son's welfare as well.

Overall engagement in both formal and community-based recovery programs are imperative to one's recovery from criminal and substance use behaviors. Ms. Yepez is no exception to this as to her self-report of her personal history. Programs such as DREAM court are very important because they are effective. It is in my professional opinion that Ms. Yepez would be a wonderful candidate for such a program.

Thank you for your time and consideration.

Sincerely,

Gianna Adams SUDPT

Email: gianna.adams@wstcs.org
Phone: +1 360-842-2033
4060 Wheaton Way, Suite F
Bremerton, WA 98310
www.westsoundtreatmentcenter.org



1415 Lumsden Road, Fuller-Wise Building     360-876-9430     westsound6@wavecable.com
Port Orchard, Washington 98367-9179     Fax 360-876-0713     www.westsoundtreatmentcenter.org



*Improving Lives and Restoring Hope through Education and Support Services*

# WEST SOUND TREATMENT CENTER

4060 Wheaton Way Suite F
Bremerton, WA 98310
Phone: 360-876-9430 ♦ Fax: 360-362-1179

February 5, 2024

Dear, To Whom It May Concern,

I am writing to wholeheartedly recommend Stephanie Yepez for admission into your therapeutic court program. In my capacity as Clinical Supervisor/Recovery Counselor, I have had the privilege of working closely with Stephanie since June 15, 2023, and have witnessed firsthand her dedication, resilience, and commitment to personal growth and positive change.

I have come to know Stephanie as a person of exceptional character, resilience, and determination. She possesses a genuine commitment to personal improvement and rehabilitation, and I believe that participating in your therapeutic court program will provide her with the support and structure necessary to continue her positive journey.

Stephanie has faced challenges with courage and has consistently demonstrated a strong desire to make positive changes in her life. She is dedicated to breaking free from the cycle of addiction/other issues and is actively seeking avenues for self-improvement. Stephanie's commitment to her own rehabilitation, combined with her receptiveness to guidance and support, makes her an ideal candidate for any therapeutic court program.

Throughout our interactions, I have been consistently impressed with Stephanie's honesty and dedication, her ability to collaborate with others, and her capacity to learn from her experiences. She has shown remarkable resilience in the face of adversity, and her determination to overcome challenges is truly commendable.

I am confident that Stephanie will not only benefit from your therapeutic court program but will also contribute positively to the community within it. Her participation will not only aid in her personal rehabilitation but will also serve as an inspiration to others undergoing similar journeys.

Thank you for considering Stephanie for your program. I am confident that she will thrive under your guidance and support.

Sincerely,

Kelley Lovelace SUDP
Clinical Supervisor
West Sound Treatment Center
P: 360-842-2427
F: 360-362-1179
E: Kelley.lovelace@wstcs.org

To whom it may concern,

My name is Michael Poole, and I am writing the courts to discuss Stephanie Yepez.

First, let me introduce myself. I come from a very broken family. I made a lot of bad decisions in my teens and early twenties. At 21 I had a child with a woman who chose drugs over her children. I became a single parent to him and his sister who I later adopted. For the sake of my children, I changed my lifestyle to try and give them what I never had, love. I raised two beautiful children. Both have good jobs and have never been in trouble a day of their lives. I tried my best to teach them to be good people. I have also tried to become a better person as the years have gone by. I hold a BA in Strategic Communications from Washington State University. I believe most people can change into something better.

Since it was so personal to me that my kids' mother chose drugs over her children, I hold some very strong opinions about drug addicts. I have never had drugs or addicts around my kids and anyone who knows me, knows I won't tolerate any BS when it comes to that stuff. For people that I care about, I've always had a "you can do whatever you want, just not around me or my kids" attitude. I love people from a distance and I'm here for them when they don't want to live that lifestyle any longer.

On to Stephanie. I've known her since she was 13. She could have been younger. She was running the streets the same as I was. I was a bit older than her so I always tried my best to keep her out of trouble when she was around. As we got older, I was busy being a single parent so I did not always get to see her much but we would run into each other and we always had a good relationship. She had her struggles early on. One of the things that always separated Stephanie from others that I know and one of the things I have always appreciated about her was her honesty towards me. Whether she was living a good clean life or one with drugs, she never lied to me. She is one of the only people I would occasionally break my own rules for because I trusted her. If I asked her if she was doing drugs she would tell me the truth. I have always checked on her periodically because I worried about her. She had years of good times and then years of bad times but she never lied to me about anything she had done. I have always told her that she is, can, and should do better.

Moving forward you already know her record so I don't need to talk about that part of her life. It's pretty self-explanatory. I want to talk about these last (roughly) 8 years. Stephanie was doing good. She had gotten married and was doing well with sobriety. I don't know how long she had been clean but I believe it was for a long time.

She was the manager at a local restaurant and she was raising her son. She was doing everything she should have been doing and minding her p's and q's. We talked off and on because I was always kind of checking up on her. Usually through Facebook but occasionally on the phone. At some point, her marriage didn't quite turn out the way I think either of them had envisioned it and they separated. She was still doing well, she had a good job and she rented an apartment for her and her son. It just so happens she lived a couple blocks down from where I have been living for the last 25 years so we ended up seeing each other and talking to each other more often.

One of the things I need to mention about Stephanie and her management job is that she liked to hire people with a not-so-good past because she was trying to give them the

chance to do and be better. She hired lots of felons and people with drug histories. She tried to help people escape that lifestyle.

I think she had been living in her place for about a year, doing well and just doing the daily grind that we all do. It was about this time when she had a couple of events in her life that I believe caused her to change her path.

The first event was the death of her son's father. He had been sober from what she had told me and if I remember correctly started using and was dead within two days. I know from talking to her that this was very upsetting to her and it was very hard for her son. I think there was a lot of remorse, heartbreak, and pain associated with his death. She was drinking a lot more than would be considered normal. She and I would talk and she knew that it was a slippery slope. I have a feeling she might have used drugs at this point but I don't clearly remember the timeline. She at some point told me she had slipped up and used a couple of times but had stopped. We weren't talking too much after that, I was busy taking care of my dying stepfather and Covid was in full swing at that point if I remember correctly.

She came over one day and told me about the next thing that had happened to her. She told me about a rape that she had been the victim of. As I said earlier, Stephanie didn't lie or embellish things with me; she is a tough girl. Listening to her explain the events that took place I could tell she wasn't telling me the full story as to what happened, probably to spare me the details, but I could tell it was bad. I sensed that she was shaken to her core and very traumatized by this event. I urged her to call law enforcement which I believe she did. I also believe the man in question is serving a sentence for rape currently. I believe this event was the last straw for her and I think she was using heavily after this.

She was making mistake after mistake. I don't know too much about her life after this point because she told me she was using and per my own rules she didn't come around. I did check up on her once in a while because I worried about her but I didn't want to know too much. On the one hand, I was sympathetic to her and the things she had been experiencing and on the other hand, I was disappointed with her. She knew this and stayed away. There was a long period when we didn't communicate. She was deep into her addiction, and I didn't hear from her until after she had already been arrested and charged. She eventually got ahold of me and told me about how much trouble she was in.

I am writing today to ask for some leniency in her case. There are a few reasons I'm going to address for your consideration

Here is my first consideration. Stephanie's son lost his father just a couple of years ago, and he is potentially losing his mother now. Now, I know it's not the courts' responsibility to worry about every family dynamic when sentencing an offender, but I hope the thought can lower the scales of justice even in the slightest amounts. When Stephanie is sober and present she is a good mother. Unfortunately, if she goes away for an extended period, he isn't going to have the best life. I know she is worried about the people who have offered to care for him while she is gone. Worried about their actual commitment to such a long period. It's pretty easy to say "Hey, I'll watch your kid", but it's another thing to do. The consideration is for her son, not her. I also believe it's the most important reason and the reason I started typing today. So, I am asking you to please keep her teenage son in your thoughts when deciding her sentencing. Because honestly, I don't know what kind of life this kid will have without her around.

Secondly, it is my opinion that Stephanie is a changed person. I think this whole ordeal has changed her perspective on life. I talked briefly earlier about how she used to hire people with criminal backgrounds. I think there was a part of her that wanted to help people. I have talked to her on the phone before she has gone to NA meetings and events and overheard how happy the people were to have her there. She has a strong presence about her. One that I think could help people navigate the path to sobriety. I don't know if she realizes it yet, but I think her path might be to help others.

Lastly, I believe that she has learned her lesson. Sounds cliche, I know. I've known her for a long time, and she has never lied to me. I've known a lot of drug addicts over the years, and I'll be the first to tell you how much I can't stand them. I raised two children by myself because their mother chose drugs over them. Stephanie knew how I felt about it and always told me the truth, no matter how disappointed I was in her. Because of her honesty towards me, she has gained a respect in me that very few people ever have. So, when we talked about this experience and her feelings, I believe everything expressed to me. She knows she screwed up. She knows there are going to be penalties for it. She is scared, and for the first time, she has told me that she will never screw up again when this is all over. So I ask this court to show leniency towards this woman because I believe this is the last you will ever see of her. I'd go as far as to say that if you ever have an issue with her again, I'd write another letter begging you to lock her away forever.

I don't see the value of keeping her locked away right now. She has kids that need a mother. She has people who look at her as a guiding light in addiction recovery programs. She has me making a promise that if I ever see her screwing up again, I will personally bring it to your attention.

Stephanie did not ask me to write this statement. I don't think she would have ever asked me because she knows how I feel about drugs and drug-related issues. I offered and wrote from my heart.

Thank you for taking the time to read what I have written. I appreciate any consideration that you may give in the situation.

Have a great day.

Michael Poole
mikepoole2004@yahoo.com
1114 Shorewood Dr, Apt C
Bremerton, WA   98312

Mark A. and Sherrie G. Thoman
7026 Parkdale Drive NW
Bremerton, WA 98311-8942

April 7, 2024

To Whom It May Concern,

We are Sherrie and Mark Thoman, and we are the parents of Stephanie Jean Yepez. It was brought to our attention that many drug defendants do not have any relationship whatsoever with their families. We are writing this letter to let you know that we are a loving and close family and live in the same county as Stephanie and her children.

We have unconditional love for Stephanie and always hope she makes great choices in life for herself as well as for her children. We admit that the relapses have been quite rough for us all, but we are extremely optimistic that she is, "all in," this time with her recovery and working through her processes to deal with stress and grief.

We lost our son, Stephanie's brother, 15 years ago in a car accident on his way to work. And then Stephanie's Son's father lost his life to drugs when he relapsed a little over four years ago.

We have seen her putting in the time and energy to again be a part of the sober community in Kitsap County. We believe that is the most productive thing she can do for herself at this juncture. We personally know a few of the people who are a part of that community and they frequently reached out to us when Stephanie was in active addiction to let us know they had not given up on her. We have heard from a few of them since Stephanie rejoined this community and they are so pleased with her progress. There are many people in Stephanie's corner in our little community which brings us hope for Stephanie's future.

We personally would appreciate it if Stephanie could get assigned Dream Court instead of incarceration as we feel if she just keeps on this path that she started in June of 2023 that she can get the better of these demons and hopefully have a productive life while raising her teenage son through his High School Years.

We are personally grateful for your consideration in this matter.

Sincerely,

Mark A Thoman
(360) 692-7629
mat1958@hotmail.com

Sherrie G Thoman
(360) 471-5635
sgt60@comcast.net

Re: Character Reference for Stephanie Yepez

To whom it may concern,

I am writing to provide a character reference for my friend, Stephanie. have known Stephanie for the past ten years, and during this time, I have witnessed her struggle with substance use disorder and, more importantly, her commitment to recovery over the last ten months. We were in Drug Court together ten years ago and I can say with confidence the dedication to her recovery that she has showed this time has made the biggest difference.

I would like to highlight Stephanie's sincere efforts to overcome the challenges associated with substance abuse. In the past, addiction has posed significant obstacles in her life, affecting various aspects, including her personal relationships, employment, and overall well-being. However, in the last ten months, I have observed a remarkable transformation in Stephanie. I am not sure if the person reading this is familiar with 12 step programs, if you are not, there is 5 things that the program suggests that we do in order to have long lasting recovery. I have seen Steph do all of these things and more.

I am the president of a nonprofit that is committed to helping people come out of addiction. The Kitsap County Drug Court Alumni Association is a Kitsap based nonprofit that does community outreach and transitional housing amongst other things. Our board of directors is previous drug court participants, some of us graduated and some did not. Our only requirement is abstinence from drugs. Since Stephanie's arrest she has been coming to our business meetings and been an irreplaceable member that we can count on to help when needed.

Her dedication to recovery has been nothing short of inspiring. Steph has actively sought professional help, attended support groups, and engaged in therapy to address the root causes of her substance use disorder. She has demonstrated resilience, self-awareness, and a genuine commitment to making positive changes in her life.

Moreover, Stephanie has taken proactive steps to rebuild her life. She has sought and maintained stable employment, rekindled important relationships, and embraced a healthier lifestyle. It is evident that she has learned from her past mistakes and is determined to create a brighter future for herself.

I firmly believe that Stephanie has the potential to continue this path of recovery and contribute positively to society. An opportunity for her to participate in Dream court would not only recognize the progress she has made but also allow her the opportunity to further rebuild her life and continue the path of rehabilitation.

I am hopeful that the court will consider these positive changes when evaluating Stephanie's case. If necessary, I am willing to testify to the sincerity of her efforts and the positive impact her recovery has had on her life.

Thank you for your time and consideration.

Sincerely,

Anngela Olson

KCDCAA President

 Gmail

**Really Rare <reallyrarebreed@gmail.com>**

## Stephanie Yepez Character Reference Letter
4 messages

**John Wainscott** <john@bremertonfoodline.org>
To: Reallyrarebreed@gmail.com
Thu, Feb 8, 2024 at 10:38 PM

To whom it may concern:

My name is John Wainscott. I am a person in long term recovery from addiction and the current transportation and facilities manager for the Bremerton Foodline. I am writing this as a reference to the quality of character of Miss Stephanie Yepez.

During my time in recovery, it pains me to say, but the majority of individuals in treatment find themselves losing the battle that plagues them. Many addicts find short term recovery from their addiction before relapsing. Others may stay clean for an extended period, but to do little if anything to expand their horizons, better their lives and grow as human beings. Stephanie is one of the select few that I can earnestly say does NOT fall into these categories.

From the moment I met Miss Yepez, she has demonstrated a depth of character and zeal for life that most do not have. She is a stalwart and regular attendee at treatment/self-help groups. She not only takes steps to better her own life, but also continues to show up and show out in the lives of those around her.

It takes a certain depth of character for an individual to take responsibility for their actions. However, it takes an entirely different person all together to take the necessary actions to change their actions and amend the damages they have done. Miss Yepez possesses this latter depth and quality; I have seen and experienced it first hand. It has a been an absolute pleasure being able to watch her grow during this junction in her life, solely because she has taken every right turn, no matter how painful or tough it may get; she continues to thrive.

I don't say these words lightly, and there are very few that I could honestly say them about. If anyone deserves an opportunity to continue to grow, I sincerely believe it is her. I have no doubts that Stephanie will succeed in life. I would hope and pray that the court would allow her to continue on this path of recovery, growth and success that she is on. I pray this not only for herself, but also for all those around her that she pours into and helps along the way; myself included.

Please feel free to contact me at any time.

Sincerely,

John Wainscott
(360) 204-6098
John@BremertonFoodline.org

**John Wainscott** <john@bremertonfoodline.org>
To: Reallyrarebreed@gmail.com
Thu, Feb 8, 2024 at 10:39 PM

On Thu, Feb 8, 2024 at 10:38 PM John Wainscott <j                          > wrote:
To whom it may concern:

My name is John Wainscott. I am a person in long term recovery from addiction and the current transportation and facilities manager for the Bremerton Foodline. I am writing this as a reference to the quality of character of Miss Stephanie Yepez.

During my time in recovery, it pains me to say, but the majority of individuals in treatment find themselves losing the battle that plagues them. Many addicts find short term recovery from their addiction before relapsing. Others may stay clean for an extended period, but to do little if anything to expand their horizons, better their lives and grow as human beings. Stephanie is one of the select few that I can earnestly say does NOT fall into these categories.

John Wainscott
(360) 204-6098
John@BremertonFoodline.org

**John Wainscott** <john@bremertonfoodline.org>
To: Really Rare <Reallyrarebreed@gmail.com>

Mon, Feb 12, 2024 at 12:03 PM

Absolutely! Praying for ya girl!

On Fri, Feb 9, 2024 at 10:32 PM Really Rare <reallyrarebreed@gmail.com> wrote:
Thanks again

On Fri, Feb 9, 2024 at 12:52 PM John Wainscott <john@bremertonfoodline.org> wrote:

On Thu, Feb 8, 2024 at 10:38 PM John Wainscott <john@bremertonfoodline.org> wrote:
To whom it may concern:

My name is John Wainscott. I am a person in long term recovery from addiction and the current transportation and facilities manager for the Bremerton Foodline. I am writing this as a reference to the quality of character of Miss Stephanie Yepez.

During my time in recovery, it pains me to say, but the majority of individuals in treatment find themselves losing the battle that plagues them. Many addicts find short term recovery from their addiction before relapsing. Others may stay clean for an extended period, but to do little if anything to expand their horizons, better their lives and grow as human beings. Stephanie is one of the select few that I can earnestly say does NOT fall into these categories.

From the moment I met Miss Yepez, she has demonstrated a depth of character and zeal for life that most do not have. She is a stalwart and regular attendee at treatment/self-help groups. She not only takes steps to better her own life, but also continues to show up and show out in the lives of those around her.

It takes a certain depth of character for an individual to take responsibility for their actions. However, it takes an entirely different person all together to take the necessary actions to change their actions and amend the damages they have done. Miss Yepez possesses this latter depth and quality; I have seen and experienced it first hand. It has a been an absolute pleasure being able to watch her grow during this junction in her life, solely because she has taken every right turn, no matter how painful or tough it may get; she continues to thrive.

I don't say these words lightly, and there are very few that I could honestly say them about. If anyone deserves an opportunity to continue to grow, I sincerely believe it is her. I have no doubts that Stephanie will succeed in life. I would hope and pray that the court would allow her to continue on this path of recovery, growth and success that she is on. I pray this not only for herself, but also for all those around her that she pours into and helps along the way; myself included.

Please feel free to contact me at any time.

Sincerely,

John Wainscott
(360) 204-6098
John@BremertonFoodline.org

To Whom it May Concern,

I am writing to implore you to consider a sentencing alternative for Stephanie Yepez and in doing so, take advantage of the opportunity to strengthen our community and avoid taking a mother from her son.

The standard model of incarcerating individuals in an effort to address what amounts to a public health crisis has long been an epic failure. Redressing the "war on drugs" and its outrageous sentencing standards for non-violent drug offenders is the reason that sentencing alternatives have gained so much momentum in state courts in recent years and should be more widely practiced at the federal level. Addiction to and distribution of controlled substances are usually two sides of the same coin, where addicts either become thieves of identities and property, or follow the Capitalist model of economy in this country. Unfortunately the path that demonstrates the most integrity, has the most severe consequences. If you're thinking that such integrity doesn't account for damage to the community, I would encourage you to consider the collateral damage you can avoid in granting a sentencing alternative.

Clinically, the remission of substance use disorders, and recidivism in general, is contingent on 3 things: a reduction in risk factors, an increase in protective factors, and resilience.  The beauty of sentencing alternatives is the carrot and the stick; failure resulting in a prison sentence mitigates the risk of returning to substance use, and program requirements, including emersion in the recovery community, increase stability in relationships and increase protective factors. The wild card then becomes resilience.

Since getting clean, Stephanie has demonstrated resilience in a multitude of ways. She is a daily part of her son's life, she almost immediately gained full time employment, she has met or exceeded all of the pre-trial release conditions, and she has been able to use the credibility she gained within the substance use community to be a beacon for those who are looking to change their lives but don't know where to start. As a survivor of sexual assault, she has been engaged in trauma therapy and has been actively involved in creating safe space for other survivors. She has become a participant in grassroots efforts to reform a system that has failed to effectively address our public health crisis, and she has done it all while setting and maintaining healthy boundaries.

On a personal level, Stephanie is an amazing human. She is kind, compassionate, generous, dedicated, loyal, and has a strong work ethic. Her energy is the kind that makes people around her want to grow so they can be on her level. Losing her to incarceration takes a protective factor out of the community at an expense to the tax payers that serves no purpose.

I'm a behavioral health case manager; I graduated with honors from Western Washington University, I've done international volunteer work with NGOs on the ground in South Africa, I work with the most marginalized populations in our community, have volunteered with reentry work for years with state level offenders, have sat on the board of a non-profit created to expand available clean and sober housing and am very active in my community. If you looked at me on paper, all you'd see is a 9 point felon for whom years in prison was not a deterrent. We are more than the sum of our crimes. In my last case a judge took a chance on me and saved my life. I'm asking you to save Stephanie's, and countless others in the process.


Respectfully,


Whitney Turrieta

 Gmail

**Really Rare <reallyrarebreed@gmail.com>**

## Stephanie Yepez
1 message

**Andrea Taylor** <roundtablepizzaadm@gmail.com>                    Sun, Feb 11, 2024 at 9:21 AM
To: "Jeniecelacross@gmail.com" <Jeniecelacross@gmail.com>
Cc: "Reallyrarebreed@gmail.com" <Reallyrarebreed@gmail.com>

To whom it may concern,

I, Andrea Taylor, am the District Manager of Round Table Pizza. I am writing this on behalf of Stephanie because I feel that she would be a great candidate for one of your alternative programs. Stephanie has been a great asset to our Silverdale team. I have also work with Stephanie at Mod Pizza and have seen her be very successful in recovery. I feel that loosing her would put a strain on our Silverdale store as she is one of our more experienced employees, given the opportunity I know that she will rise to the occasion and exceed expectations. Thanks you for your time and consideration in this matter.

Andrea Taylor
District Manager
Round Table Pizza
(360)204-6039

To whom it may concern,

My name is Roxanne Cook, I am the general manager of Gig Harbor Jimmy Johns. I hired Stephanie Yepez last year. She is a very reliable, hardworking, honest employee. Stephanie became a closing manager within her first 90 days here. She gave me ample notice when a job closer to her home came available. I have let her know she will always have a job here if things at her new place of employment don't work out. If you have any questions or concerns feel free to contact me at 253-881-9342.

Sincerely,

Roxanne Cook

 Gmail

Jeniece LaCross <jeniecelacross@gmail.com>

## Stephanie Yepez
1 message

**Thomas Thomas** <twicethomasjr@gmail.com>    Thu, Feb 8, 2024 at 4:05 PM
To: Jeniecelacross@gmail.com

Hello, my name is Thomas and I am the general manager of round table pizza in Silverdale Washington.
I'm writing today to show support for Stephanie. I personally have watched a transformation in her and because of that transformation also built both a professional and personal relationship with her.
Earlier this last year after finding out she was recently released from jail I noticed a difference in her behavior and actions. What I found out was that those chances were brought out by her working a program of narcotics anonymous. She reached out and got a sponsor, that sponsor made her accountable and Twitter her to call daily if she was serious. Call she did, and to this day does.
I hired Stephanie at my place of employment with the hopes she could become my assistant manager. She is the hardest worker and is a born leader, not to mention always willing to help guide another person back on track when they might be heading for disaster. I' in my opinion Stephanie is a completely different person than when she was arrested! Every day she goes to meetings, works with her sponsor, with another addict she learns new patterns and is currently growing into a new person. I think she needs the tools to learn how to live without coping with drugs or the drug lifestyle.
As I said before I'd love to hire her as management and possibly be the face of that establishment because of the changes I have personally watched happen before me.
I ask that you give her and society the gift of treatment, so... she can become the amazing citizen I know she will become. Thank you.

Sent from my iPhone

To Whom It May Concern,

I am writing to provide a character reference for Stephanie Yepez, whom I have had the privilege of knowing as a fellow member of Narcotics Anonymous. I am delighted to testify to her unwavering commitment and remarkable progress in her recovery journey. Stephanie marked an important milestone in her recovery by celebrating eleven months of sobriety as of April 25th , 2024, demonstrating her dedication and resilience. Her clean date, May 25, 2023, stands as a testament to the beginning of her renewed path of clarity and purpose. Stephanie has actively engaged in numerous community support activities, significantly contributing to the Narcotics Anonymous community. As a member of the Clean and Free registration committee, she played a pivotal role in organizing an annual convention that draws thousands of attendees from across the country and abroad. Her plans to continue her involvement in the upcoming 2025 committee highlight her ongoing commitment to service and community engagement. Currently working through Step Three of the twelve-step program, Stephanie attends between three to five meetings each week, a clear indication of her dedication to her personal recovery and growth. Her recent graduation from the West Sound Treatment Center in March 2024 further underscores her success and readiness to move forward in life without the need for meeting verification, showcasing her trustworthiness and independence.

What I find most inspiring about Stephanie is her ability to share the lessons of her recovery journey with others, including myself. Despite my own two years of sobriety, I continue to learn from her experiences and insights, which are delivered with humility and wisdom. It is for these reasons that I strongly support Stephanie Yepez's application to the DREAM Court program. Her journey through recovery exemplifies the potential for personal transformation and dedication to a life free from addiction. Stephanie's continued growth and commitment to recovery not only benefit her personally but also contributes positively to our community. Thank you for considering this reference. I am confident that Stephanie will continue to thrive and inspire others in the DREAM Court program, just as she has in Narcotics Anonymous.

Sincerely,

Cherylynda Gordon

Phone: (564) 546-0413

Email: d1cherylynda@outlook.com

April 28, 2024

Jeff Nickerson
1512 8th Street
Bremerton, WA, 98337
Suffakat@msn.com
(360) 731-8318

To Whom it May Concern,

My name is Jeff Nickerson. I've been in recovery since 1994 and am an active member of Narcotics Anonymous, a member of the Hospitals and Institutions panel for 26 years, Public Information and Activities Committee and I sponsor several men working the program of recovery.

I am writing to provide a character reference for Stephanie Yepez, whom I have known for a short amount of time on an intimate recovery level. During this time, I have had the opportunity to observe her closely and have known of her before. She appears to have reached the point of willingness to do whatever it takes to change her life.

She is joining committees and getting involved in the program and working with other people. The level of honesty is apparent, in my experience, of someone in the process of recovery.

Thank you for the opportunity to share this information with you. If you have any further questions please feel free to contact me.

Sincerely,
Jeff Nickerson

Dear Sir or Madam,

My name is Meagan Tucker, and I am relatively new to the recovery community here in Washington. I recently moved from California with very little to my name, a challenging start to my new life and recovery journey. It was under these circumstances that I first met Stephanie Yepez, and I would like to share with you the profound impact she has had on my life. From the moment Stephanie learned about my situation, she extended kindness and support that went beyond my expectations. At one of my first meetings, without any request from my side, Stephanie brought me a collection of clothes. This gesture of generosity from someone I had just met was not only incredibly helpful but deeply moving. It was my first experience of the community's support, and it came from her genuine heart. Stephanie is a person who lives the principles of recovery every day. Observing her, I see someone who embodies the strength and commitment that I aspire to. Her actions speak volumes about her character and the sincerity of her commitment to helping others. Whether it's how she handles her own challenges, how she supports newcomers like myself, or her involvement in broader community initiatives like the Clean and Free registration committee, Stephanie is a constant source of inspiration and a pillar in our community. Her dedication to attending meetings regularly, despite having graduated from the West Sound Treatment Center and no longer needing to verify her attendance, shows her dedication to her sobriety and to supporting others in their recovery journeys. I am in awe of how Stephanie balances her recovery with contributing to our community and still finds time to reach out and uplift someone like me. Her mentorship and friendship have been key to my early recovery, and she motivates me to pass on the kindness I have received from her. I wholeheartedly support Stephanie Yepez's application to the DREAM Court program. Her leadership and compassion make her a remarkable candidate who will continue to benefit greatly from and contribute to this program. Stephanie has not only helped me but also continually uplifts our community, proving herself as an invaluable asset wherever she goes. Thank you for considering my perspective as someone directly impacted by Stephanie's grace and dedication.


Warm regards,

Meagan Tucker

Feel free to contact me with any questions regarding this letter.

Phone number: (925) 642-3721

To Whom It May Concern,

My name is Merrilee Webber, and I am advocating for my friend, Stephanie Yepez, who is currently seeking a new beginning through Dream Court. Throughout the time I've known her, Stephanie has faced the possibility of incarceration with remarkable strength. Despite this, she has remained committed to her recovery, consistently attending support groups, engaging with her sponsor, and building a strong network of support within the sober community.

I firmly believe that Stephanie's dedication to staying clean, even under such pressure, is a testament to her ability to succeed in Dream Court. She has not only shown remorse for her past actions but also a sincere readiness to transform her life.

As someone who has experienced incarceration and found a path to long-term sobriety, I can attest that true rehabilitation comes from recovery and positive connections, not time behind bars. Incarceration would not only hinder Stephanie's progress but also her potential positive contributions to society.

Therefore, I urge you to consider granting Stephanie the opportunity to participate in Dream Court, where she can continue her journey of change and growth.

Thank you for your consideration.

Sincerely,
Merrilee Webber

Patience Kropp

patiencekropp@gmail.com

360-932-4161

106 Lilac Ln. Bremerton WA 98312

To Whom It May Concern,

I am writing to offer my enthusiastic support for Stephanie Yepez's application to be accepted into Dream Court with the Federal Bureau. Having known Stephanie for over 7 years and witnessed her journey of recovery, personal growth, and the struggle in between, I am confident that she possesses the qualities and commitment necessary to thrive in this program.

Stephanie's dedication to her recovery and her continuous efforts towards self-improvement are truly commendable. Over the years, I have seen her overcome numerous challenges with resilience and determination. She has not only maintained her recovery this time but has also made significant strides in rebuilding her life and relationships.

One of Stephanie's greatest strengths is her unwavering commitment to her family, particularly her son. Her transformation into a supportive and loving parent is a testament to her character and the positive changes she has made in her life. Additionally, her dedication to maintaining healthy relationships with her family members speaks volumes about her maturity and willingness to grow.

This time has been different. Something clicked for Stephanie. The person she is right now, today, is something different than most people have ever seen. For the first time ever, Staphanie has started to show up for herself- which is almost unheard of. She has always been the type of person to do everything for other people and put yourself last.

I remember a few months ago, she mentioned the possibly to get Dream Court. She told me she didn't think that she could get it. I told her that with all the support she has from so many people in the rooms of Narcotics Anonymous, we will all go to court and get shirts that say, "Steph for Dream Court", and she immediately started to cry because for the first time, she believed that people would show up for her. The support system she has now is out of this world. When we say we will show up for someone, we mean it. And after all the work Stephanie has been doing, she deserves it.

Furthermore, Stephanie's involvement in Narcotics Anonymous (NA) is a testament to her commitment to personal growth and community support. She has actively participated in various service positions within NA, demonstrating her willingness to give back and support others in their recovery journey.

In conclusion, Stephanie Yepez is a remarkable individual who has shown incredible resilience and determination in overcoming adversity. Her commitment to her sobriety, her family, and her community makes her an ideal candidate for Dream Court. I wholeheartedly recommend her for acceptance into the program and am confident that she will excel in this opportunity.

Thank you for considering Stephanie's application. Should you require any further information or clarification, please do not hesitate to contact me.

Warm regards,

Patience Kropp

Teresa Ellingson
Human Resources Business Partner
Seattle WA
360-286-7963

To whom it may concern,

I am writing this letter as a testament to the change in Stephanie Yepez and her need for
continued treatment and lifestyle options that are conducive to a life of Recovery. I have
been in Recovery for 17 years 7 months and 28 days, graduating from the Kitsap County
Drug Court program and have the honor of sponsoring Stephanie.

I wanted to share what I see in Stephanie, so I will start by saying that she inspires me to
continue working hard at my own recovery lifestyle even all these years into the life change.

Stephanie really approached this whole situation with the idea that even if she must be
incarcerated that she wanted to figure out what and why she continued to use drugs and
how to make the changes needed to achieve a lifetime of recovery.  She has requested to
do a deep dive into her behaviors and feelings, opening herself up to feeling the pain that
she endured both before and during her active addiction so she can finally move past it.
Her willingness to dive into her feelings has been a testament to the desire she has for this
new life.  She has displayed her understanding of how the program works by using her
resources and staying connected, hitting a meeting or making a phone call when needed.

Aside from her willingness to work on herself she has continued to show that she is
commented to others and invested in helping her fellow addict. She has displayed her
understanding by continuing to raise her hand and volunteer for service positions, truly
becoming a part of something bigger than herself. She understands that she can only keep
her clean time by giving of herself and that to maintain what she has she needs to be active
in her recovery.

Stephanie is doing all the things that show me that she wants this new way of life. I have
had the pleasure of getting to see Stephanie work hard to build herself into a person that
she and the people around her can be proud of. I am excited to continue to work the
program of recovery with Stephanie. I continue to be inspired by her dedication to herself
and the program. I really hope that you can see the value in not only her being in the Dream
Court program but the value she will also add to the program. I will end this with some
words that describe what Stephanie is, strong, dedicated, honest and most of all willing.

Thank you for your consideration,

Teresa Ellingson

To whom it may concern,

My name is Thomas. I'm writing you today in support of Stephanie Yepez. I personally have known Stephanie for approximately 21 years. I knew Stephanie in active addiction in various attempts at getting clean and now the best version of her while she's actually working a program of Narcotics Anonymous.

I am a successful product of the program of Narcotics Anonymous. I worked my way from a low bottom level drug addict, in and out of prison, jails, treatment centers, and several years being homeless on the street. Today that is not me. Today I am a successful and productive member of society, and I happen to be the General Manager of Round table pizza in Silverdale, where Stephanie is currently employed.

About eight months ago, Stephanie applied to work in my store. I gave Stephanie a shot because she had pizza experience. What happened next was a pleasure to be a part of. When Stephanie started working the program of Narcotics Anonymous, she got a sponsor, started taking recommendations and started to show up to work with a smile on her face. Her whole direction changed. When I hired Stephanie, she started coaching the younger employees on how to do their job and how to tackle obstacles in their lives. Stephanie has never hidden her past or what she is facing now, she has used her experience to help others. Stephanie has done this knowing that she quite well, could be going to prison for a long time. She didn't let that distract her from her ultimate goal of achieving long-term recovery. I personally believe Stephanie adopted the "Prepare for the worst, hope for the best mentality". I think her thought pattern is that you only live once and she wants her legacy to be that of a responsible, productive mother, friend, coworker, and I think her ultimate goal is to help others. Stephanie has personally helped me through trials and tribulations the last eight months. She steps up when nobody else wants to, she shows up for work, she goes above and beyond and always has an ear to listen.

Long-term recovery has given me the life that I have today! I see Stephanie at meetings, NA conventions, and during service work, all of this outside the workplace. Stephanie has become a pillar in the recovery community. She is a valued member of our community and if I had it my way, I would have 10 more just like her as my employees. When making a decision on Stephanie just know in the past several months, she has changed more lives for the good than any other human being I know. And I personally feel that a huge disservice would be being done if she was removed from the young women in the recovery community. My personal phone number is 360-742-1209 and I would be happy to talk to anybody that has any questions about Mrs. Yepez. It was my pleasure to write this recommendation.

Thank you,

T.j. Thomas

General manager

Round table pizza

Silverdale

SUPPLEMENTAL LETTERS OF SUPPORT

 Gmail

**Karen Unger <karenlunger@gmail.com>**

---

## Character reference for Stephanie Yepez
1 message

---

**Really Rare** <reallyrarebreed@gmail.com>                    Fri, Jun 21, 2024 at 9:57 PM
To: karenlunger@gmail.com

To whom it may concern:

My name is Wes Broussard and I've had the pleasure of knowing Stephanie for over a year now and I can tell you that she is an inspiration to those in the rooms of Narcotics Anonymous.    I understand she was recently denied dream court and although that is a major upset she's still coming to meetings and hasn't given up her seat in the rooms of Narcotics Anonymous!!   This definitely shows growth!!   Please give her the lowest end of the sentence possible so that she can hurry and come back to us within the clean and sober community!!!   Thank you for your time in reading this!!

Wes Broussard
360-660-0886

Cherylynda Gordon

15 n Brookdale Lane #203

Bremerton, WA 98311

d1cherylynda@outlook.com

564-546-0413

June 17, 2024


Honorable David G. Estudillo

U. S. District Court

1717 Pacific Ave

Tacoma, WA 98402


Dear Judge Estudillo,


I am writing to respectfully request your consideration for the lowest possible sentence for Stephanie Yepez, who is currently facing sentencing. While Stephanie was unfortunately denied admission into the DREAM Court program, she has continued to demonstrate her unwavering commitment to recovery and personal growth.


Stephanie has maintained her sobriety with remarkable dedication, fully embracing a clean and healthy lifestyle. Her perseverance in the face of adversity is truly commendable. She has continued to fulfill her service positions within our community, showing her dedication to giving back and supporting others in their recovery journeys.


Despite the disappointment of being denied DREAM Court, Stephanie has taken the news with grace and remains committed to her recovery. Her actions speak volumes about her character and her genuine desire to change her life for the better.

Stephanie's continued sobriety, commitment to service, and positive attitude are clear indicators of her potential for rehabilitation. I firmly believe that a shorter sentence will allow her to continue her progress and contribute positively to society.

Thank you for your time and consideration in this matter. I trust that your judgment will reflect the hope and opportunity for Stephanie to continue her path of recovery and service.

Sincerely,

Cherylynda Gordon