Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONNIE GRIFFIN,<br><br>Defendant. | NO. CR23-5085-DGE-21<br><br>UNITED STATES' SENTENCING MEMORANDUM (CORRECTED) |

Defendant RONNIE GRIFFIN appears before this court for sentencing in the above-captioned case pursuant to his guilty plea on August 1, 2024, to Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Presentence Report (PSR) at ¶ 2; Plea Agreement at ¶ 1.). The United States respectfully recommends the Court impose a sentence of 120 months' imprisonment to be followed by a five-year term of supervised release, and a $100 special assessment. The government believes this sentence, which includes a significant downward variance from the applicable sentencing guidelines range, represents the appropriate sentence that is sufficient, but not greater than necessary, to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a).[1]

---

[1] This corrected Memorandum is submitted to correct non-substantive errors in the government's original filing.

United States' Sentencing Memorandum - 1
United States v. Ronnie Griffin, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## I. BACKGROUND

### A. Offense Conduct

#### 1. Summary of Investigation

In March 2023, the Federal Bureau of Investigation, the Drug Enforcement Administration, and other federal and local law enforcement agencies concluded a two-year investigation into drug trafficking focusing on two prison gangs, the Aryan Family and Omerta, which are predominately while prison gangs that have a presence both inside and out of prison facilities. (PSR ¶ 34.) These gangs engage in drug trafficking as one of their primary purposes, and the investigation identified numerous individuals affiliated with the gangs who were determined to have been involved in drug trafficking and money laundering, including the distribution of multi-pound quantities of methamphetamine, fentanyl, heroin, and cocaine throughout western Washington and other states. *Id.* The investigative team devoted substantial resources to identifying the organizational structure of the drug trafficking organization (DTO), including multiple rounds of court-authorized interceptions of wire and electronic communications, surveillance, the use of confidential informants, search warrants, and other investigative techniques. (PSR ¶¶ 35-36.)

Through this investigation, agents learned of three distribution cells who were working together as the Aryan Family/Omerta DTO. One of the cells was led by defendants Jesse Bailey and Thomas Carver. (PSR ¶ 36.) Over the course of the investigation, agents seized an estimated 223 pounds of methamphetamine, an estimated 830,000 fentanyl pills, multiple-pound quantities of fentanyl powder, cocaine, heroin, and marijuana, $338,000 of suspected drug proceeds, and 48 firearms from members of the conspiracy. (PSR ¶ 37.) In addition, during the coordinated arrests of the DTO members in March 2023, law enforcement seized approximately 22 pounds of methamphetamine, 26 pounds of fentanyl in pill and powder form, six pounds of heroin, more than $330,000 of suspected drug proceeds, and 177 additional firearms. (PSR ¶ 38.)

United States' Sentencing Memorandum - 2
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 2. Griffin's Role in the DTO

Ronnie Griffin served as a drug redistributor and confidant of Jesse Bailey. Intercepted phone calls in November 2022 showed that Griffin and Bailey spoke in coded language about drugs and drug trafficking. For example, on November 24, 2022, Griffin asked Bailey for two pounds of methamphetamine and some fentanyl pills. (PSR ¶ 40; Plea Agreement ¶ 8.b.) Griffin told Bailey that he would have the money to pay for the drugs after he sold a pound of methamphetamine—an arrangement among drug traffickers known as "fronting" that is common among drug dealers with a longstanding and mutually beneficial relationship their drug resuppliers—demonstrating Griffin's trusted and close relationship with Bailey.

That relationship included Griffin handling suppling drugs to Bailey's smaller drug customers, as evidenced by their November 26, 2022, call, in which Bailey offered to have Griffin handle the drug sales to these customers in return for splitting the drug proceeds. (PSR ¶ 41; Plea Agreement ¶ 8.c.) Griffin agreed and they further discussed how much to charge for the fentanyl pills Griffin would be supplying. *Id.*

Evidencing the frequency of the drug dealing Griffin had agreed to conduct with Bailey, on November 30, 2022, they discussed Griffin purchasing two pounds of methamphetamine and 6,000 fentanyl pills from Bailey, and Bailey told Griffin he would be sending the contact information for a regular drug customer who would purchase drugs every two to three days. Griffin told Bailey he had collected the money and later said he would like to meet and that he had $11,000 to purchase two pounds of methamphetamine and six ounces of heroin. Griffin then met with Bailey. (PSR ¶ 42; Plea Agreement ¶ 8.d.)

On December 8, 2022, Griffin and Bailey discussed Griffin serving as a middleman between Bailey and one of his drug redistributors. Griffin then agreed to meet the redistributor at a place other than Bailey's residence to avoid the risk of Bailey being surveilled by law enforcement. Griffin agreed to deliver 10 pounds of methamphetamine

United States' Sentencing Memorandum - 3
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

along with 5,000 fentanyl pills, and Bailey and Griffin agreed that Griffin would keep eight pounds of methamphetamine for himself. (PSR ¶ 43; Plea Agreement ¶ 8.e.)

On March 22, 2023, Griffin was arrested at his residence. When law enforcement arrived with a search warrant, it took Griffin 20 to 30 minutes to come out of the house. A search of his bedroom located $3,920, 15 rounds of ammunition, and a small bag of methamphetamine. Two firearms were located in a toilet at the residence. (PSR ¶ 44; Plea Agreement ¶ 8.f.) Also in the residence were a total of 139.3 grams of methamphetamine, 127.8 grams of an unknown powder, and 59.2 grams of unknown pink and red pills. (PSR ¶ 45; Plea Agreement ¶ 8.f.)

**B.   Procedural History**

Griffin was indicted by a grand jury on March 16, 2023, and was arrested and made his initial appearance on March 23, 2023. (Dkt. 1, 143.) On August 1, 2024, Griffin entered a plea of guilty to a lesser-included offense in Count 1 (Conspiracy to Distribute Controlled Substances). (Dkt. 887.)

## II.   BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the

United States' Sentencing Memorandum - 4
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50. Here, a downward variance to the government's recommended sentence of 10 years is appropriate in light of Griffin's age and background.

### III.    SENTENCING GUIDELINES CALCULATIONS

**A.    Offense Level**

    **1.    The Base Offense Level**

Griffin apparently routinely engaged in the distribution of multiple kilogram quantities of methamphetamine, multi-ounce quantities of heroin, and many thousands of fentanyl pills. In only the drug deals caught on intercepted communications, Griffin agreed to distribute 24 pounds of methamphetamine, six ounces of heroin, and at least thousands of fentanyl pills amounting to at least 1.3 kilograms. Conservatively, this quantity of narcotics triggers base offense level 34 under the Drug Quantity Table of USSG § 2D1.1. (*See* Plea Agreement ¶ 10.a; PSR ¶ 51.); This Court should apply a two-level enhancement under USSG § 2D1.1(b)(1) because Griffin possessed a firearm in connection with the offense. (*See* Plea Agreement ¶¶ 10.b; PSR ¶ 52.).

The government moves the Court to apply a three-level reduction because the defendant has demonstrated acceptance of responsibility for the offense under USSG 3E1.1(a) and (b). With this adjustment, Griffin has a total offense level of 33. (PSR ¶ 60.)

//

United States' Sentencing Memorandum - 5
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.    Defendant's Criminal History**

Griffin has a criminal history extending back to the age of 18, including criminal convictions in 20 cases. Most of Defendant's prior criminal history is too old to count toward his criminal history score but paints the clear picture of an individual who has lived outside the confines of the law for his entire adult life. This history includes convictions for theft, obstructing a public servant, possession of stolen property, forgery, possession of drugs and drug paraphernalia, attempting to elude police vehicles, unlawful possession of a weapon, identity theft, harassment, and fourth degree assault. (PSR ¶¶ 62-81.) These convictions have resulted in significant custodial sentences of 20 months, 13 months, 22 months (three times), 26 months, 44 months, 57 months, 43 months, 24 months, and 17 months. (PSR ¶¶ 64, 67, 69, 70, 71, 72, 73, 74, 75, 77, 78, 79, 80, 81.)

The government agrees with the Probation Office that the only convictions that counts toward Griffin's criminal history score are: (1) his 2008 conviction for possession of a stolen vehicle; (2) his 2013 conviction for forgery; (3) his 2016 conviction for attempting to elude a police vehicle; and (4) his 2020 conviction for attempting to elude a police vehicle. Each of these convictions scores three criminal history points, resulting in a criminal history score of 12. Thus, Griffin's criminal history category is V. (PSR ¶ 83.)

**C.    Guidelines Range**

Based on a total offense level of 33 and criminal history category V, the guidelines sentencing range is 210 to 262 months.

**IV.    FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court sentence the defendant to 10 years in custody followed by a five-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1),

United States' Sentencing Memorandum - 6
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the jointly recommended sentence.

### A.     Nature and Circumstances, and Seriousness of the Offense

Griffin distributed large quantities of methamphetamine, fentanyl, and heroin. These drugs have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs Griffin and his co-conspirators is difficult to quantify, it is undeniably extensive based on the hundreds of pounds of methamphetamine and tens of thousands of fentanyl pills that he distributed. These drugs undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the counterfeit oxycodone pills they are taking contain fentanyl, their lives are put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state.

To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a decrease in overdose deaths nationwide, Washington had an increase in overdose deaths of over 27% in the year ending December 2023. *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at:

//

United States' Sentencing Memorandum - 7
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed December 3, 2024). The scale of the problem is massive, with the CDC estimating that 3,527 people died of drug overdoses in Washington state in the 12-month period ending June 2024, a 6.36% increase from the prior year. This is one of the largest increases of any state in the nation, as illustrated by the graphic published by the CDC, below:



National Center for Health Statistics, *Provisional Drug Overdose Death Counts*, available at: https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm#notes (last accessed December 3, 2024).

**B.      History and Characteristics of the Defendant**

Griffin is currently 66 years old. While his early upbringing was more stable than many drug defendants, he dropped out of high school in his last year and began using methamphetamine in his teens. (PSR ¶ 111-114.) He then went on to an adult life spent in and out of prison. (PSR ¶ 101.) According to Washington Department of Corrections information, Griffin is associated with the Peckerwoods gang, a white supremacist gang

United States' Sentencing Memorandum - 8
United States v. Ronnie Griffin, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

with a presence in DOC prisons. His stepson, lead defendant Jesse Bailey, is also a member of a white supremacist group. (PSR ¶ 82.) Griffin has a tattoo of a swastika and skulls on his right arm. (PSR ¶ 102.)

Griffin's many theft-related convictions show he largely supported himself through criminal activities for much of his adult life, despite apparent stints engaged in legitimate employment. (PSR ¶ 116.) While much of this criminal history is old, his pattern of criminality is essentially continuous since the age of 18 and has continued into his 60's with his most recent felony eluding conviction in 2020, for which he was sentenced to 17 months' imprisonment after leading police on a 95-miles-per-hour chase that ended only after police deployed a spike strip to disable the vehicle Griffin was driving. (PSR ¶ 81.) Griffin has prior eluding convictions in 2016 at age 58, in which he lost control of his vehicle before being arrested (PSR ¶ 80), in 2008 at age 49, in which he fled for over 30 minutes at speeds of up to 100 miles-per-hour (PSR¶ 78), in 2001 at age 42, in which he nearly hit several people and jumped a curb with such force that his vehicle became airborne and landed so hard all four tires were flattened and the rims dented, after which he fled on foot (PSR ¶ 74), and in 1997 at age 38, in which he lost control of his vehicle and hit an unoccupied van (PSR ¶ 73).

Griffin has now been convicted of his first federal offense, and his most serious drug trafficking offense. While the Probation Office is correct that the sentence they are recommending would be the longest period of incarceration Griffin has served, Griffin has already served several lengthy prison sentences which have not succeeded in dissuading him from further criminal conduct. These include sentence of 44 months in 2001 for eluding (PSR¶ 74), 57 months in 2004 for identity theft, possession of stolen property, and forgery (PSR ¶ 75), and 43 months in 2008 for driving a stolen vehicle (PSR ¶ 78). The 2004 case involved Griffin driving a truck that had been reported stolen and the eventual recovery of counterfeit checks and a stolen debit card. Griffin stated that he got the truck from his stepson, Jesse Bailey.

United States' Sentencing Memorandum - 9
*United States v. Ronnie Griffin*, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

This criminal history forms a pattern that suggests Griffin is not easily deterred from a criminal lifestyle. A sentence that is significantly longer than has been imposed in the past can provide the escalated punishment necessary for meet the needs of deterrence in light of Griffin's prior sentences which have had little effect on his criminal conduct.

While Griffin has had a methamphetamine abuse problem (PSR ¶ 113), his offense conduct shows he chose to participate in encouraging the destructive additive behaviors of others, despite any awareness he may have had of the consequences of drug use. Griffin is currently in poor physical health. (PSR ¶¶ 120-107.) His age and health are factors that justify the government's recommended variance. A 10-year sentence would adequately reflect the seriousness of the offense, the aggravating characteristics of the defendant, and the need for both specific and general deterrence. Although this sentence is well below the guideline range, it is sufficient to hold the defendant accountable in light of his advanced age and the state of his health.

## V.  CONCLUSION

For all of the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence of 120 months, to be followed by a five-year term of supervised release, and a $100 special assessment.

DATED this 10th day of December, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

 /s/ Max B. Shiner
MAX B. SHINER
ZACHARY W. DILLON
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Fax: 253-428-3826
Email: max.shiner@usdoj.gov

United States' Sentencing Memorandum - 10
United States v. Ronnie Griffin, CR23-5085-DGE-21

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800