

FILED _____ LODGED
_____ RECEIVED

FEB 07 2025

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRYSON GILL,

Defendant.

NO. 23-5085-DGE-3

**PLEA AGREEMENT**

The United States, through United States Attorney Tessa M. Gorman and Assistant United States Attorneys Zachary W. Dillon and Max B. Shiner of the Western District of Washington, and Defendant BRYSON GILL and his attorney, John Henry Browne, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.      **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter pleas of guilty to the charges brought by the United States Attorney in a Superseding Information.

2.      **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Superseding Information:

Plea Agreement - 1
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a.    *Conspiracy to Distribute Controlled Substances*, as charged in Count 1, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A);

b.    *Possession of a Firearm in Furtherance of a Drug Trafficking Crime,* as charged in Count 2, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and

c.    *Conspiracy to Commit Money Laundering*, as charged in Count 3, in violation of Title 18, United States Code, Section 1956(h).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.    **Elements of the Offenses.** The elements of the offenses to which Defendant is pleading guilty are as follows:

a.    The elements of *Conspiracy to Distribute Controlled Substances*, as charged in Count 1, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), are as follows:

i.    First, beginning at a time unknown and continuing until on or about March 22, 2023, there was an agreement between two or more persons to distribute controlled substances including fentanyl, methamphetamine, and heroin; and

ii.    Second, Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

b.    The elements of *Possession of a Firearm in Furtherance of a Drug Trafficking Crime*, as charged in Count 2, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), are as follows:

Plea Agreement - 2
*United States v. Bryson Gill*, CR23-5085-DGE-3

i.     First, Defendant committed the crime of *Conspiracy to Distribute Controlled Substances*, as charged in Count 1 of the Superseding Information, which is a drug trafficking crime;

ii.     Second, Defendant knowingly possessed at least one of the firearms described in the Superseding Information; and

iii.     Third, Defendant possessed the firearm in furtherance of the crime of *Conspiracy to Distribute Controlled Substances.*

c.     The elements of *Conspiracy to Commit Money Laundering*, as charged in Count 3, in violation of Title 18, United States Code, Section 1956(h), are as follows:

i.     First, there was an agreement to commit money laundering;

ii.     Second, the defendant knew the objective of the agreement; and

iii.     Third, the defendant joined the agreement with the intent to further its unlawful purpose.

4.     **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

a.     For the offense of *Conspiracy to Distribute Controlled Substances*, as charged in Count 1: A maximum term of imprisonment of up to life imprisonment and a mandatory minimum term of imprisonment of ten years, a fine of up to $10,000,000, a period of supervision following release from prison of at least five years and up to a lifetime term of supervision, and a mandatory special assessment of $100.

b.     For the offense of *Possession of a Firearm in Furtherance of a Drug Trafficking Offense,* as charged in Count 2: A maximum term of imprisonment of up to life imprisonment and a mandatory minimum term of imprisonment of five

Plea Agreement - 3
*United States v. Bryson Gill*, CR23-5085-DGE-3

years that must be served consecutively to any other sentence, a fine of up to $250,000, a period of supervision following release from prison of up to five years, and a mandatory special assessment of $100.

    c.    For the offense of *Conspiracy to Commit Money Laundering*, as charged in Count 3: A maximum term of imprisonment of up to twenty years, a fine of up to $500,000 or twice the value of the funds involved in the conspiracy, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.

**Drug Offense - Proof of Drug Quantity for Mandatory Minimum.** Defendant further understands that, in order to invoke the statutory sentence for the drug offense charged in Count 1, the United States must prove that Defendant's conduct as a member of the narcotics conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count 1, involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, and/or 1,000 grams or more of a mixture or substance containing a detectable amount of heroin. Defendant expressly waives the right to require the United States to make this proof at trial and stipulates as a part of this plea of guilty that Defendant's conduct as a member of the narcotics conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count 1, involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, and 1,000 grams or more of a mixture or substance containing a detectable amount of heroin.

Plea Agreement - 4
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

5.    **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

Plea Agreement - 5
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

6.    **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a.    The right to plead not guilty and to persist in a plea of not guilty;

b.    The right to a speedy and public trial before a jury of Defendant's peers;

c.    The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d.    The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e.    The right to confront and cross-examine witnesses against Defendant at trial;

f.    The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.    The right to appeal a finding of guilt or any pretrial rulings.

7.    **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to

Plea Agreement - 6
*United States v. Bryson Gill*, CR23-5085-DGE-3

criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a.      The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b.      After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.      The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.      Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8.      **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9.      **Statement of Facts.** The parties agree on the following facts. Defendant admits Defendant is guilty of the charged offenses and that each of the actions described below constitute relevant conduct to the charged offenses:

a.      Beginning at a time unknown, and continuing until at least March 22, 2023, Defendant Bryson Gill conspired with others, known and unknown, to distribute controlled substances, including methamphetamine, fentanyl, and heroin, within the Western District of Washington. In furtherance of the conspiracy, Gill engaged in at least the following conduct:

Plea Agreement - 7
*United States v. Bryson Gill*, CR23-5085-DGE-3

b. In 2022, in partnership with multiple co-conspirators, Gill made multiple trips to Arizona to purchase large quantities of narcotics that he or the co-conspirators transported back to the Western District of Washington for the purpose of redistribution for profit.

c. On November 27, 2022, in a lawfully intercepted phone call between Gill and a co-conspirator (Co-Conspirator A), Gill directed Co-Conspirator A to "Get 20 blues in a bag" and "drop it off to [unidentified co-conspirator] JHG B6 on the way out to the woods." The term "20 blues" referred to 20,000 pills laced with fentanyl that are marked with the M30 insignia to mimic prescription OxyContin pills. "The woods" referred to a property in Shelton, Washington, rented by a co-conspirator ("Co-Conspirator B") that the conspirators used as a stash house where they stored controlled substances and paraphernalia intended for pressing fentanyl powder into fentanyl-laced pills.

d. Later that day, in a lawfully intercepted phone call, Gill asked another co-conspirator ("Co-Conspirator C") how many "blueberries" were left "after Adam." "Blueberries" was coded language referring to fentanyl pills. Co-Conspirator C checked with Co-Conspirator A and confirmed for Gill that they had "24" left at the Shelton stash house, which referred to 24 bags containing 10,000 fentanyl pills each.

e. Later that day, in a lawfully intercepted phone call, Gill told Co-Conspirator C to "pull 40 out and put 'em in a bag," which was coded language directing Co-Conspirator C to prepare a bag of 40,000 fentanyl pills for a future drug deal. Co-Conspirator C told Gill that they needed masks and gloves because they were "about to break into it right now." This referred to breaking into packages of powdered fentanyl that Gill and his co-conspirators intended to press into fentanyl pills to later sell for profit. In a subsequent intercepted call, Gill told one of his customers, "We are done mixing it, we just need to press it."

f. In subsequent phone calls, Gill provided Co-Conspirator C the numeric combination to a safe located in a recreational vehicle parked at the Shelton

Plea Agreement - 8
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

stash house and told Co-Conspirator C that he thought there were bricks of fentanyl in the safe. After opening the safe, Co-Conspirator C reported to Gill that the safe contained "waters," which referred to methamphetamine. Following this call, Gill met Co-Conspirators C and A at the conspirators' stash house in Shelton.

g.    That same night, in a lawfully intercepted phone call, Co-Conspirator C told Gill that he had dropped off Co-Conspirator A and asked what Gill wanted him to do next, and Gill told Co-Conspirator C that around midnight they "will go and grab some straps," referring to guns. A few minutes later, agents intercepted a call between Gill and a drug customer he was about to meet up with for a drug transaction. That customer sent a courier Gill didn't recognize, and Gill told the customer, "somebody pulled up as we're sitting here, I got my pistol out."

h.    The next day, November 28, 2022, in a lawfully intercepted phone call, Co-Conspirator C complained to Gill that Co-Conspirator B was not picking up his phone and complained that whatever Co-Conspirator B did to the pill press at the Shelton stash house, it was "making the pills look like shit" and that they were "fuzzy" and were "not clean like the other ones." Referring to the pill press, Co-Conspirator C said, "it looks like this thing isn't pressuring enough," and "There's enough powder and all that's right but there's not, it's too loose. It's not pressing." Gill then told Co-Conspirator C that he would call Co-Conspirator B to attempt to remedy the problem with the pill press.

i.    On December 1, 2022, in a lawfully intercepted call, Gill directed Co-Conspirator C to provided 1,000 fentanyl pills to a customer. Later that day, in a subsequent lawfully intercepted call, Co-Conspirator C confirmed that he met up with the customer.

j.    On December 2, 2022, Gill called Co-Conspirator C to confirm Co-Conspirator C took everything out of his trunk. Co-Conspirator C told Gill, "there's an SKS in there [referring to an SKS-style rifle], you want to put that in my bed?" Gill

//

Plea Agreement - 9
*United States v. Bryson Gill*, CR23-5085-DGE-3

then directed Co-Conspirator C to "take all the bad staff out of your car" and reminded him that he had no plates on his car.

k.       Later that day, in a lawfully intercepted call, Gill and Co-Conspirator C discussed a plot involving another drug dealer. When Co-Conspirator C asked Gill, "if I do snatch him, where you want me to take him?" Gill instructed Co-Conspirator C to take him to a known location, to ensure the drug dealer didn't have his phone, to not say Gill's name. and to confront the drug dealer about why he hasn't been answering the phone.

l.       Later that day, in a series of lawfully intercepted calls, Co-Conspirator C told Gill that he was outside the drug dealer's home. Co-Conspirator C admitted to Gill that he didn't know what the drug dealer looked like, and Gill agreed to send a picture. Co-Conspirator C then reported to Gill about the layout of the drug dealer's house including security cameras and said that because of the cameras he was trying "not to look too suspicious." Law enforcement diverted any potential plot by sending a marked police vehicle to contact Co-Conspirator C about suspected burglaries in the area, and immediately after being confronted by law enforcement, Co-Conspirator C left the area.

m.       On December 3, 2022, in an intercepted call between Gill and a drug supplier he regularly supplied with narcotics (Co-conspirator D), Co-conspirator D told Gill that "there was an extra ten in there." Gill replied, "You got eighty, right?" This referred to Gill providing this customer 80,000 fentanyl pills. Co-conspirator D then said he only gave Gill $42,000 and owes Gill another $6,000. Law enforcement previously intercepted a call where Co-Conspirator D said that Gill had 800,000 fentanyl pills available.

n.       On December 4, 2022, Gill traveled to Arizona with Co-Conspirator C to pick up a large shipment of narcotics, and on December 6, 2022, //

Plea Agreement - 10
*United States v. Bryson Gill*, CR23-5085-DGE-3

Co-Conspirator C drove back toward Washington in a white GMC pickup towing a trailer, arriving on December 7, 2022, at the stash house in Shelton.

o.    On December 9, 2022, law enforcement served a search warrant on the Shelton stash house and located, among other things, approximately 64 kilograms of fentanyl pills (approximately 640,000 pills), 12,756 grams of methamphetamine, one kilogram of fentanyl powder, 23 firearms, two pill presses, and $81,036 in United States currency in various locations and in the following amounts: $59,799; $10,415; $6,512; $1,745; $1,293; $1,238, and $34. Gill admits that all the seized currency represents proceeds of the drug-trafficking conspiracy. The methamphetamine was 98 percent pure, resulting in 12,500 grams of pure methamphetamine. Gill admits that the items listed above, including but not limited to the firearms, were possessed by Gill or his co-conspirators as part of and in furtherance of the conspiracy to distribute controlled substances and with the intent of selling the drugs for profit.

p.    Included in the firearms found at the Shelton stash house was a Winchester 1200 12-gauge shotgun, which was located on the property in the trailer that Co-Conspirator C had transported from Arizona. In that trailer, along with the shotgun, was the bulk of the fentanyl pills, fentanyl powder, and methamphetamine located at the stash house, body armor, the two pill presses, and various drug trafficking and manufacturing paraphernalia including scales, a burner, a grinder, and cutting and binding agents for pill manufacturing. Gill jointly possessed the shotgun with his fellow co-conspirators for the purpose of protecting the drugs and drug proceeds in the trailer and on the property, in furtherance of the drug trafficking conspiracy.

q.    On the same date, law enforcement served a search warrant on Gill's residence in Graham Washington. In a trailer located on Gill's property, where Co-Conspirator C was residing, law enforcement located 13 grams of fentanyl powder, 61 fentanyl pills, and the following firearms: a loaded Springfield Armory XDM Elite 10mm pistol with magazine; a loaded CZ 7 .62x25 handgun with magazine; an unloaded

Plea Agreement - 11
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

SCCY CPX-2 handgun with a high capacity magazine; a loaded Glock 43 handgun; a loaded Panzer Arms BP-12 12-gauge shotgun with a loaded drum magazine; an unloaded PW Arms Yugo M59/66 7 .62x39 rifle; a privately made 7.62 caliber rifle with loaded drum magazine; and body armor.

r.    In Co-Conspirator C's black 2012 Mercedes-Benz, which was parked on Gill's property, law enforcement located a loaded Sig Sauer SP2340 .40 caliber pistol behind the front seat along with three loaded magazines. In the trunk of the Mercedes-Benz, law enforcement found a stolen ZEV OZ-9mm handgun with a high-capacity magazine, a Springfield Armory Saint AR-15 rifle with a fully loaded 115 round drum magazine, and a Silencerco Omega 9K firearm suppressor.

s.    On December 10, 2022, in a lawfully intercepted call, Gill told a co-conspirator that the FBI and DEA came to his house, "the other house" and "each one of my people." He told the co-conspirator that they "got the stamper and everything." Gill also told the co-conspirator that when he saw law enforcement coming, he threw a pistol out the back window that law enforcement didn't find.

t.    From December 2022 through March 2023, Defendant continued to work with Co-Conspirator C to establish a new stash house in Concho, Arizona. On March 22, 2023, agents raided the Concho Arizona address where they seized thousands of rounds of ammunition, multiple pounds of marijuana, and the following firearms:

i.    one Glock GMBH 22 pistol, bearing serial number YVB129;

ii.    one stolen HS Produkt (IM METAL) Model XD40 pistol, bearing serial number US407482;

iii.    one Aero Precision M4E1, bearing serial number 4JULY-4311;

iv.    one stolen FN Herstal PS90 rifle, bearing serial number FN065952;

//

Plea Agreement - 12
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

v.      one Smith & Wesson CS45 Chiefs Special pistol, bearing serial number VJC7049;

vi.     one Sig Sauer P250 handgun, bearing serial number EAK019664;

vii.    two Polymer80 Inc PF940C pistols;

viii.   one Smith & Wesson 4013 handgun, bearing serial number VBA3729;

ix.     one Glock GMBH 27 handgun, bearing serial number HSA472;

x.      one Ruger Security six revolver, bearing serial number 153-39369;

xi.     FC Arms (M3D) pistol with no serial number

xii.    one Smith & Wesson 38 Airweight revolver;

xiii.   one Smith & Wesson SD9VE pistol, bearing serial number FXT8383;

xiv.    one Calwestco Inc. J22 pistol, bearing serial number 550432;

xv.     one Glock GMBH Model 35 pistol, bearing serial number HBR558;

xvi.    one Hawk Industries Inc. Nef Pardner shotgun, bearing serial number NZ722392;

xvii.   Stoeger P3000 shotgun, bearing serial number 1914198

xviii.  one JLD Enterprises PTR-91 rifle, bearing serial number A5740;

xix.    one Belgium 1893 Nagant revolver, bearing serial number EC740;

xx.     one stolen Honor Defense LLC Honor Guard pistol, bearing serial number 14211;

Plea Agreement - 13
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

xxi.    one Glock GMBH Model 20 pistol, bearing serial number BMTF432;

xxii.    one Fratelli Tanfoglio pistol, bearing serial number EB32336;

xxiii.    one Unique Model 17 pistol, bearing serial number 400095;

xxiv.    one HS Produkt XD40SL pistol, bearing serial number XD421487;

xxv.    one Smith & Wesson M&P 9 handgun, bearing serial number JLE4931;

xxvi.    one Smith & Wesson M&P 22 pistol;

xxvii.    one Leinad Inc. PM12 pistol, bearing serial number 12-0015108;

xxviii.    one Intratec TECDC9 pistol, bearing serial number D125030;

xxix.    one Intratec TEC9 pistol, bearing serial number 117382;

xxx.    one Armscor of the Philippines Model 1911 pistol, bearing serial number A775013;

xxxi.    one Volunteer Enterprises Commando MK 45 rifle, bearing serial number 60111;

xxxii.    one Remington 760 Gamemaster rifle, bearing serial number A6917154;

xxxiii.    one unknown Uzi style pistol;

xxxiv.    one Century International Arms RAS47 rifle, bearing serial number RAS47048611;

xxxv.    one Remington 870 Express Super Magnum shotgun, bearing serial number D772259A;

xxxvi.    one Remington 870 shotgun, bearing serial number V383218X;

xxxvii.    one Norinco NHM91 rifle, bearing serial number 9305561;

Plea Agreement - 14
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

xxxviii.   one CBC Rossi Tuffy shotgun, bearing serial number 7CS045812L;

xxxix.   one Kel-Tec KSG shotgun, bearing serial number XMJ55;

xl.   one AR style rifle, bearing serial number 599528;

xli.   one AR Platform pistol;

xlii.   one Bravo Company BCM4 rifle, bearing serial number W13861;

xliii.   one Amadeo Rossi 3 shotgun, bearing serial number 240330;

xliv.   one SOTA Arms PA15 rifle, bearing serial number 3578;

xlv.   one Smith & Wesson MP15 pistol, bearing serial number 29133;

xlvi.   one Norinco SKS rifle;

xlvii.   one Chongqing Jianshe Machinery M12AK shotgun, bearing serial number ML2002251;

xlviii.   one Hatsan Escort Magnum shotgun, bearing serial number 300477;

xlix.   one Anderson AM-15 rifle, bearing serial number 18046872;

l.   one Tokarev Savuma Silah Sanay 12 gauge shotgun, bearing serial number 52-I21YD-3039;

li.   one Sig Sauer 556 rifle, bearing serial number JT019335;

lii.   one Hi-Point Model C pistol, bearing serial number P10108566;

liii.   one Glock GMBH pistol, bearing serial number HZW728 and HZW625;

liv.   one Polymer80 Inc. PF45 pistol;

lv.   one Radical Firearms RF-15 rifle, bearing serial number 19-104951;

lvi.    one Hi-Point 4095TS rifle, bearing serial number H37920;

lvii.    one Masterpiece Arms handgun, bearing serial number A11347;

lviii.    one Volunteer Enterprises Commando MK III rifle, bearing serial number 45P00715;

lix.    one Hatsan Escort shotgun, bearing serial number 915848;

lx.    one HS Produkt XD40 pistol, bearing serial number BY447365;

lxi.    one HS Produkt XD45 pistol, bearing serial number GM475888;

lxii.    one Anderson AM-15 rifle, bearing serial number 16422209;

lxiii.    one AR style rifle;

lxiv.    one Standard Manufacturing DP-12 shotgun, bearing serial number DP12096;

lxv.    one ROMARM Micro Draco pistol, bearing serial number 21PMD-24859;

lxvi.    one SOTA Arms Inc. rifle, bearing serial number 3577;

lxvii.    one Yugoslavia rifle/knife, bearing serial number L-460011;

lxviii.    one Norinco rifle, bearing serial number 10396588;

lxix.    one unmarked Micro rifle; and

lxx.    one Arsenal SAM7 rifle.

u.    Gill admits the foregoing firearms, and any associated firearm accessories, magazines, and ammunition, are property derived from proceeds traceable to the offense of *Conspiracy to Distribute Controlled Substances* or were used or intended to be used to facilitate the drug-trafficking conspiracy.

//

//

v.      Beginning at a time unknown, and continuing until at least March 22, 2023, Gill conspired with others, known and unknown, to commit money laundering offenses.

w.      Objects of the money-laundering conspiracy included conducting financial transactions involving the proceeds of the distribution of controlled substances with the intent to promote additional distribution of controlled substances and knowing that the financial transactions were designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, and control of those proceeds.

x.      Another object of the money-laundering conspiracy was to engage in monetary transactions involving more than $10,000 of proceeds of the distribution of controlled substances.

y.      In furtherance of the money-laundering conspiracy, Gill engaged in at least the following conduct:

i.      Gill and his co-conspirators formed business entities including Family Ties Enterprise, LLC, doing business as Kash Flo Kennels, Kash Flo Klothing, Kash Flo Kuisine, and Kash Flo Kurrency (collectively, "Family Ties"), and Kash Flo Kennels AZ LLC ("KFK AZ"), which they used and intended to use, at least in part, to conceal and disguise the nature, location, source, ownership, and control of proceeds of the distribution of controlled substances.

ii.      Gill and his co-conspirators opened accounts in Family Ties' name at financial institutions including, without limitation, Washington State Employees Credit Union ("WSECU") and Block, Inc. ("Cash App"). They then deposited, and directed others to deposit, proceeds of the distribution of controlled substances in Family Ties' accounts. For example, WSECU account ending -5078, held in the name of Family Ties, received at least $927,059.00 in cash deposits—many in amounts greater than $10,000.00—all of which constituted or derived from proceeds of the drug-trafficking activity described above.

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

iii.    Gill and his co-conspirators also directed purchasers of controlled substances to send funds used to purchase controlled substances to Family Ties' Cash App account and to include notes for the transactions that falsely stated the funds were for payment of legitimate goods and services purchased from Family Ties, including dogs, dog supplies, and dog training and boarding services, among others. For example, on or about December 4, 2022, Gill sent a series of text messages directing the recipient to send him payments for controlled substances through Family Ties' Cash App account: $FamilyTiesEntLLC. He further instructed the recipient to make a notation in the Cash App transaction that it was "FOR DOG TRAINING."

iv.    Gill and his co-conspirators sent funds in Family Ties' Cash App account, which contained proceeds of the distribution of controlled substances, to Family Ties' WSECU account ending -5078 and to the Cash App accounts of other members of the conspiracy to distribute controlled substances. In total, Family Ties' Cash App account sent at least $14,276.23 in funds to Family Ties' WSECU account -5078.

v.    Gill and his co-conspirators used United States currency and funds in Family Ties' WSECU account ending -5078, which constituted and contained proceeds of the distribution of controlled substances, to purchase jewelry, vehicles, and other goods and services for their personal benefit. Many of the transactions involved more than $10,000.00 in proceeds of the distribution of controlled substances. For example, on or about May 21, 2022, Gill and his co-conspirators used $23,500.00 in United States currency and $17,810.00 from Family Ties' WSECU account ending -5078, which constituted proceeds of the distribution of controlled substances, to purchase jewelry from Catalina Holdings Inc. Gill also purchased a 2016 Polaris RZR ("2016 Polaris") with proceeds of the distribution of controlled substances.

vi.    Gill and his co-conspirators paid salaries to members of the conspiracy including using funds containing proceeds of the distribution of controlled substances.

vii.    Gill and his co-conspirators filed federal tax returns falsely claiming that proceeds of the distribution of controlled substances deposited in Family Ties' accounts represented revenues from Family Ties' purported legitimate business activities, and that salaries paid to members of the conspiracy represented legitimate business expenses.

viii.    Gill and his co-conspirators formed business entities including, without limitation, Sonoran Asset Management LLC ("Sonoran"), which they used to pay Gill's salary using funds containing proceeds of the distribution of controlled substances.

ix.    Gill and his co-conspirators used proceeds of the distribution of controlled substances to purchase equipment and bulk chemical compounds intended to further the conspiracy to distribute controlled substances described above. For example, on or about March 31 and April 19, 2021, Gill and his co-conspirators conducted transfers of $2,792.72 and $4,916.26, respectively, in connection with the purchase of a pill press. As another example, on or about May 18, 2021, Gill and his co-conspirators conducted a transfer of $1,083.12 from Family Ties' WSECU account ending -5078 in connection with the purchase of caffeine anhydrous.

x.    Gill and his co-conspirators used proceeds of the distribution of controlled substances to purchase assets, including real properties located at 49 & 50 County Road N9012, Concho, Arizona, 85924 (collectively, the "Concho Parcels") and a 2018 Dodge Charger, VIN: 2C3CDXL93JH328602 (the "2018 Charger") for Gill's benefit in the names of nominal owners. The assets were also used in furtherance of the conspiracy to distribute controlled substances described above. For example, on or about December 14, 2022, law enforcement lawfully intercepted a telephone call between Gill and a co-conspirator during which they discussed purchasing the Concho Parcels in the co-conspirator's name for the benefit of Gill in light of the recent law enforcement searches of Gill's other property. On or about December 16, 2022, Gill and his co-

Plea Agreement - 19
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

conspirators deposited $22,000.00 in United States currency in a WSECU account. Also on or about December 16, 2022, $22,000.00 were transferred from the WSECU account to the account of Gill's co-conspirator to be used for the purchase of the Concho Parcels. Gill and his co-conspirators used the Concho Parcels to store firearms, ammunition, and controlled substances. As another example, on or about December 9, 2022, law enforcement lawfully intercepted a telephone call between Gill and a co-conspirator discussing how to persuade law enforcement that Gill was not the true beneficial owner of the 2018 Charger. In fact, Gill was the true owner of the 2018 Charger, which he purchased with proceeds of, and which he used to facilitate, the conspiracy to distribute controlled substances described above.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

10. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

a. A base offense level of 38, pursuant to USSG § 2D1.1(c)(1), because the relevant conduct involved at least 90,000 kilograms of converted drug weight.

b. A two-level increase, pursuant to USSG § 2D1.1(b)(12), for maintaining a drug premises for the purpose of manufacturing and/or distributing controlled substances;

c. A four-level increase, pursuant to USSG § 2D1.1(b)(13), for knowingly misrepresenting a mixture or substance containing fentanyl as another substance;

d. A two-level increase, pursuant to USSG § 2S1.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956;

e.    A two-level increase, pursuant to USSG § 2S1.1(b)(2)(3), because the offense involved sophisticated laundering;

f.    A two-level increase, pursuant to USSG § 3B1.1(c), because the defendant was an organizer, leader, manager, or supervisor in the criminal activity.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11.    **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12.    **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties agree to jointly recommend at the time of sentencing that the appropriate term of imprisonment to be imposed by the Court is a term of 210 months. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

Plea Agreement - 21
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

13.    **Forfeiture of Assets.** Defendant understands the forfeiture of property is part of the sentence that must be imposed in this case.

Defendant agrees to forfeit to the United States immediately all of his right, title, and interest in any property constituting, or derived from, any proceeds Defendant obtained, directly or indirectly, as the result of his commission of *Conspiracy to Distribute Controlled Substances*, the offense charged in Count 1 of the Superseding Information, and any of Defendant's property that was used, or intended to be used, in any manner or part, to commit, or to facilitate his commission of, the offense. Such property is forfeitable pursuant to Title 21, United States Code, Section 853(a), and includes, but is not limited to:

a.    a judgment for a sum of money (also known as a forfeiture money judgment) in the amount of $ 941,335.23 representing the proceeds Defendant obtained, directly and indirectly, as a result of his commission of the offense;

b.    real property located at 49 County Road N9012, Concho, Arizona, 85924;

c.    real property located at 50 County Road N9012, Concho, Arizona, 85924;

d.    one 2018 Dodge Charger, VIN: 2C3CDXL93JH328602, seized on or about December 9, 2022, from 9013 204th Street East, Graham, WA;

e.    one 2016 Polaris RZR, seized on or about December 9, 2022, from 9013 204th Street East, Graham, WA;

f.    the following amounts of United States currency, seized on or about December 9, 2022, from 9013 204th Street East, Graham, WA:

    i.    $59,799.00;

    ii.    $10,415.00;

Plea Agreement - 22
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

    iii.   $6,512.00;

    iv.   $1,745.00;

    v.   $1,238.00; and

    vi.   $34.00;

g. $2,610.00 in United States currency, seized on or about March 22, 2023, from 22721 West Grove Street, Buckeye, WA;

h. $1,795.47 in United States funds, seized on or about March 22, 2023, from Washington State Employees Credit Union account ending -5078; and

i. the following firearms, firearm accessories, magazines, and ammunition seized on or about March 22, 2023, from 49 & 50 North 9012, Concho, Arizona:

  i.  one Glock GMBH 22 pistol, bearing serial number YVB129;

  ii.  one stolen HS Produkt (IM METAL) Model XD40 pistol, bearing serial number US407482;

  iii.  one Aero Precision M4E1, bearing serial number 4JULY-4311;

  iv.  one stolen FN Herstal PS90 rifle, bearing serial number FN065952;

  v.  one Smith & Wesson CS45 Chiefs Special pistol, bearing serial number VJC7049;

  vi.  one Sig Sauer P250 handgun, bearing serial number EAK019664;

  vii.  two Polymer80 Inc PF940C pistols;

  viii.  one Glock GMBH 27 handgun, bearing serial number HSA472;

Plea Agreement - 23
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

ix.    one Ruger Security six revolver, bearing serial number 153-39369;

x.    one Smith & Wesson 38 Airweight revolver;

xi.    one Smith & Wesson SD9VE pistol, bearing serial number FXT8383;

xii.    one Calwestco Inc. J22 pistol, bearing serial number 550432;

xiii.    one Glock GMBH Model 35 pistol, bearing serial number HBR558;

xiv.    one Hawk Industries Inc. Nef Pardner shotgun, bearing serial number NZ722392;

xv.    Stoeger P3000 shotgun, bearing serial number 1914198

xvi.    one JLD Enterprises PTR-91 rifle, bearing serial number A5740;

xvii.    one Belgium 1893 Nagant revolver, bearing serial number EC740;

xviii.    one stolen Honor Defense LLC Honor Guard pistol, bearing serial number 14211;

xix.    one Glock GMBH Model 20 pistol, bearing serial number BMTF432;

xx.    one Fratelli Tanfoglio pistol, bearing serial number EB32336;

xxi.    one Unique Model 17 pistol, bearing serial number 400095;

xxii.    one HS Produkt XD40SL pistol, bearing serial number XD421487;

//

Plea Agreement - 24
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

xxiii.    one Smith & Wesson M&P 9 handgun, bearing serial number JLE4931;

xxiv.    one Smith & Wesson M&P 22 pistol;

xxv.    one Leinad Inc. PM12 pistol, bearing serial number 12-0015108;

xxvi.    one Intratec TECDC9 pistol, bearing serial number D125030;

xxvii.    one Intratec TEC9 pistol, bearing serial number 117382;

xxviii.    one Armscor of the Philippines Model 1911 pistol, bearing serial number A775013;

xxix.    one Volunteer Enterprises Commando MK 45 rifle, bearing serial number 60111;

xxx.    one Remington 760 Gamemaster rifle, bearing serial number A6917154;

xxxi.    one unknown Uzi style pistol;

xxxii.    one Century International Arms RAS47 rifle, bearing serial number RAS47048611;

xxxiii.    one Remington 870 Express Super Magnum shotgun, bearing serial number D772259A;

xxxiv.    one Remington 870 shotgun, bearing serial number V383218X;

xxxv.    one Norinco NHM91 rifle, bearing serial number 9305561;

xxxvi.    one CBC Rossi Tuffy shotgun, bearing serial number 7CS045812L;

xxxvii.    one Kel-Tec KSG shotgun, bearing serial number XMJ55;

xxxviii.    one AR style rifle, bearing serial number 599528;

Plea Agreement - 25
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

xxxix.  one AR Platform pistol;

xl.  one Bravo Company BCM4 rifle, bearing serial number W13861;

xli.  one Amadeo Rossi 3 shotgun, bearing serial number 240330;

xlii.  one SOTA Arms PA15 rifle, bearing serial number 3578;

xliii.  one Smith & Wesson MP15 pistol, bearing serial number 29133;

xliv.  one Norinco SKS rifle;

xlv.  one Chongqing Jianshe Machinery M12AK shotgun, bearing serial number ML2002251;

xlvi.  one Hatsan Escort Magnum shotgun, bearing serial number 300477;

xlvii.  one Anderson AM-15 rifle, bearing serial number 18046872;

xlviii.  one Tokarev Savuma Silah Sanay 12 gauge shotgun, bearing serial number 52-I21YD-3039;

xlix.  one Sig Sauer 556 rifle, bearing serial number JT019335;

l.  one Hi-Point Model C pistol, bearing serial number P10108566;

li.  one Glock GMBH pistol, bearing serial number HZW728 and HZW625;

lii.  one Polymer80 Inc. PF45 pistol;

liii.  one Radical Firearms RF-15 rifle, bearing serial number 19-104951;

liv.  one Hi-Point 4095TS rifle, bearing serial number H37920;

//

Plea Agreement - 26
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

lv.     one Masterpiece Arms handgun, bearing serial number A11347;

lvi.    one Volunteer Enterprises Commando MK III rifle, bearing serial number 45P00715;

lvii.   one Hatsan Escort shotgun, bearing serial number 915848;

lviii.  one HS Produkt XD40 pistol, bearing serial number BY447365;

lix.    one HS Produkt XD45 pistol, bearing serial number GM475888;

lx.     one Anderson AM-15 rifle, bearing serial number 16422209;

lxi.    one AR style rifle;

lxii.   one Standard Manufacturing DP-12 shotgun, bearing serial number DP12096;

lxiii.  one ROMARM Micro Draco pistol, bearing serial number 21PMD-24859;

lxiv.   one SOTA Arms Inc. rifle, bearing serial number 3577;

lxv.    one Yugoslavia rifle/knife, bearing serial number L-460011;

lxvi.   one Norinco rifle, bearing serial number 10396588;

lxvii.  one unmarked Micro rifle;

lxviii. one Arsenal SAM7 rifle; and

lxix.   any other associated firearm accessories, magazines, ammunition, and body armor.

Defendant further agrees to forfeit to the United States immediately all of his right, title, and interest in any firearms or ammunition involved in or used in his commission of *Possession of a Firearm in Furtherance of a Drug Trafficking Crime,* the offense charged

Plea Agreement - 27
*United States v. Bryson Gill*, CR23-5085-DGE-3

in Count 2 of the Superseding Information. Such property is forfeitable pursuant to Title 18, United States Code, Section 924(d)(1), by way of Title 28, United States Code, Section 2461(c).

Defendant further agrees to forfeit to the United States immediately all of his right, title, and interest in any property that was involved in, or traceable to property involved in, his commission of *Conspiracy to Commit Money Laundering*, the offense charged in Count 3 of the Superseding Information. Such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), and includes, but is not limited to, the property listed in subparagraphs a–g above.:

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim, directly or indirectly, to any such property in any federal forfeiture proceeding, administrative or judicial, which may be or have been initiated. Defendant also agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if said assets constitute or are derived from proceeds of, or were used or intended to be used to facilitate the commission of the offense charged in Count 1 of the Superseding Information; are firearms or ammunition involved in or used in his commission of the offense charged in Count 2 of the Superseding Information; or were

//

involved in, or traceable to property involved in, the offense charged in Count 3 or the Superseding Information.

14. **Abandonment of Contraband, Firearms, Firearm Accessories, Magazines, and Ammunition.** Defendant also agrees that, if any law enforcement agency seized any illegal contraband, firearms, firearm accessories, magazines, or ammunition—including the firearms and associated accessories, magazines, and ammunition identified in paragraph 9 (Statement of Facts) above—that were in Defendant's direct or indirect control, Defendant consents to the administrative disposition, official use, and/or destruction of that contraband or property. Such property includes, but is not limited to:

      a.     one SCCY CPX-2 handgun;

      b.     one Glock 43 handgun;

      c.     one ZEV OZ-9mm handgun; and

      d.     one a Springfield Armory Saint AR-15.

15. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and to move, at the time of sentencing, to dismiss the Indictment as against Defendant. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United

Plea Agreement - 29
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

16.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant and/or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17.    **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of

conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable). This includes any procedural challenges to the sentence, including any claim that the procedure employed at sentencing violated Defendant's constitutional rights.

Defendant also agrees that, by entering the guilty pleas required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction. Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea, independently from this Plea Agreement. This waiver does not preclude Defendant from bringing an appropriate motion, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18.    **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to
//

Plea Agreement - 31
*United States v. Bryson Gill*, CR23-5085-DGE-3

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

19. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

20. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 7ᵗʰ day of February, 2025.

BRYSON GILL
Defendant

JOHN HENRY BROWNE
Attorney for Defendant

VINCENT T. LOMBARDI
Assistant United States Attorney

ZACHARY W. DILLON/MAX B. SHINER
Assistant United States Attorney

Plea Agreement - 32
*United States v. Bryson Gill*, CR23-5085-DGE-3